**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| EBURY STREET CAPITAL, LLC, EB 1EMIALA, LLC, EB 2EMIALA, LLC, EBURY FUND 1 NJ LLC, and EBURY FUND 2 NJ, LLC<br><br>Plaintiffs<br><br>v.<br><br>THOMAS R. MCOSKER, LIENCLEAR – 0001, LLC, LIENCLEAR – 0002, LLC, LIENCLEAR, LLC, BLOXTRADE, LLC, BCMG INTERNATIONAL, LLC, GRICKLEGRASS FARMS, LLC, 100 AKER WOOD, LLC, BCMG TECHNOLOGIES, LLC, MAPPLUS LLC, BCMG SERVICES, LLC, MCOSKER HOLDINGS, LLC, STONEWALL HOLDINGS, LLC, BCMG, LLC, ECHO RECOVERY SOLUTIONS, LLC, and CAMBISPR, LLC<br><br>Defendants | Civil No.  19-1598<br><br><br>DAMAGES FOR BREACH OF CONTRACT, BAD FAITH, WRONGFUL CONVERSION, UNJUST ENRICHMENT, MONEY HAD AND RECEIVED<br><br><br>JURY TRIAL DEMANDED |

## VERIFIED COMPLAINT

**TO THE HONORABLE COURT:**

**COME NOW**, Plaintiffs **EBURY STREET CAPITAL, LLC ("ESC"); EBURY FUND 1 NJ, LLC; EBURY FUND 2 NJ, LLC; EB 1EMIALA, LLC; AND, EB 2EMIALA, LLC**, through the undersigned counsel, and to this Honorable Court very respectfully ALLEGE and PRAY as follows:

### I.   INTRODUCTION

This is a civil action to recover over $3.5 million of escrow funds owed to Plaintiffs, which Defendants wrongfully converted from escrow accounts in connection with the sale of tax liens, as well as the damages such wrongful conversion caused Plaintiffs. In essence, pursuant to a series of agreements between the parties concerning the sale of approximately 1,000 tax liens

on properties located in the states of Alabama and New Jersey, Defendants were required to place more than $3.5 million into escrow, to be disbursed to Plaintiffs as the trades closed and the titles to the tax liens were assigned to the Defendants. Instead of disbursing the funds as required, Defendant Thomas R. McOsker, using the Defendant companies as a front, secretly transferred over $3.5 million in escrow and converted it for his personal benefit. All of this in direct violation of the escrow agreements between the parties, resulting in the unjust enrichment of Defendants, and further damages to Plaintiffs.

## II.  JURISDICTION AND VENUE

1.      This Honorable Court has jurisdiction over this case under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Plaintiffs and Defendants, and the amount in controversy well exceeds the jurisdictional threshold of $75,000.00, excluding interests and costs.

2.      Venue is proper in this district under 28 U.S.C. § 1391, because the overwhelming majority of Defendants reside in Puerto Rico, and a substantial part of the events and tortious conduct occurred in Puerto Rico.

## III.  THE PARTIES

3.      Plaintiff ESC is a New York limited liability company with its principal place of business at 41 Purdy Ave. #278, Rye, NY10580.

4.      Plaintiff EB 1EMIALA, LLC is an Alabama limited liability company with its principal place of business at 41 Purdy Ave. #278, Rye, NY10580.

5.      Plaintiff EB 2EMIALA, LLC is an Alabama limited liability company with its principal place of business at 41 Purdy Ave. #278, Rye, NY10580.

6.      Plaintiff Ebury Fund 1 NJ, LLC is a New Jersey limited liability company with its principal place of business at 41 Purdy Ave. #278, Rye, NY10580.

7.      Plaintiff Ebury Fund 2 NJ, LLC is a New Jersey limited liability company with its principal place of business at 41 Purdy Ave. #278, Rye, NY10580.

8.      Defendant Thomas R. McOsker ("McOsker") is a resident of Puerto Rico, who owns and controls all other Defendants listed below, which will be collectively referred to as "Defendant Companies;" while those listed at 9 through 12, will be referred to as the "Tax Lien Defendants;" and those listed at 13 through 23, will be referred to as the "Investment Defendants."

9.      Defendant LienClear, LLC is a Puerto Rico limited liability company with is principal place of business at 53 Palmeras Street, 10th floor, Suite 1001, San Juan, Puerto Rico 00901.

10.     Defendant LienClear – 0001, LLC is a Delaware limited liability company with its principal place of business at 53 Palmeras Street, Suite 901, San Juan, Puerto Rico 00901.

11.     Defendant LienClear – 0002, LLC is a Delaware limited liability company with its principal place of business at 53 Palmeras Street, Suite 901, San Juan, Puerto Rico 00901.

12.     Defendant Bloxtrade, LLC is a Puerto Rico limited liability company with its principal place of business at 53 Palmeras Street, 10th floor, Suite 1001, San Juan, Puerto Rico 00901.

13.     Defendant BCMG International, LLC is a Puerto Rico limited liability company with is principal place of business at 53 Palmeras Street, Suite 901, San Juan, Puerto Rico 00901.

14.     Defendant Gricklegrass Farms, LLC is a Puerto Rico limited liability company with is principal place of business at 53 Palmeras Street, Suite 901, San Juan, Puerto Rico 00901.

15.     Defendant 100 Aker Wood, LLC is a Puerto Rico limited liability company with is principal place of business at 53 Palmeras Street, Suite 901, San Juan, Puerto Rico 00901.

16.     Defendant BCMG Technologies, LLC is a Puerto Rico limited liability company with is principal place of business at 53 Palmeras Street, Suite 901, San Juan, Puerto Rico 00901.

17.     Defendant MAPPLUS, LLC is a Puerto Rico limited liability company with is principal place of business at 53 Palmeras Street, Suite 901, San Juan, Puerto Rico 00901.

18.     Defendant BCMG Services, LLC is a Puerto Rico limited liability company with is principal place of business at 53 Palmeras Street, Suite 901, San Juan, Puerto Rico 00901.

19.     Defendant McOsker Holdings, LLC, is a Puerto Rico limited liability company with its principal place of business at 1052 Ashford Ave. Apt 8C, San Juan, Puerto Rico 00907.

20.     Defendant Stonewall Holdings, LLC, is a Puerto Rico limited liability company with its principal place of business at 60E, Dufresne Street, Humacao, Puerto Rico 00791.

21.     Defendant BCMG, LLC, is a Puerto Rico limited liability company with its principal place of business at 1052 Ashford Ave. Apt 8C, San Juan, Puerto Rico 00907.

22.     Defendant Echo Recovery Solutions, LLC, is a Puerto Rico limited liability company with its principal place of business at 60E, Dufresne Street, Humacao, Puerto Rico 00791.

23.     Defendant CAMBISPR, LLC, is a Puerto Rico limited liability Company with its principal place of business at 53 Palmeras Street, Suite 901, San Juan, Puerto Rico 00901.

## IV. FACTUAL BACKGROUND

24.     Plaintiffs are in the business of investing in tax liens.  Specifically, ESC runs the day-to-day operations of the remaining Plaintiffs, whose sole purpose is to own tax lien certificates in the States of New Jersey and Alabama.

25.     McOsker has long been a market maker and broker for tax liens transactions. McOsker conducts his business out of Puerto Rico and through myriad corporate entities, including the Tax Lien Defendants.

26.     Plaintiffs had maintained a 10-year relationship with McOsker and his businesses prior to the events giving rise to this complaint.  This relationship was built on the trust that McOsker and his businesses gained over the course of upwards of ten tax lien transactions with Plaintiffs.

27.     From 2015 to 2017, Plaintiffs acquired approximately 1,000 tax liens in the States of Alabama and New Jersey, which Plaintiffs listed with McOsker's brokerage business Defendant BloxTrade, LLC ("BloxTrade") in 2018.

28.     This resulted in four separate tax lien trades. The trades were structured so that Plaintiffs were the sellers, other parties were the ultimate buyers, and McOsker and the Tax Lien Defendants acted as middlemen. Plaintiffs would sell the tax lien certificates directly to the Tax Lien Defendants, who would arrange for their transfer to the ultimate buyers, and then sell the liens to the ultimate buyers at a markup.

29.     Each trade was governed by the same set of three agreements, from September through December 2018 – a Tax Lien Purchase and Sale Agreement, an Escrow Agreement, and a Servicer Agreement – each one between Plaintiffs and one or more of the Tax Lien Defendants. A true and correct copy of these agreements for one of the trades is attached to this complaint as **Exhibit A**. Through these agreements, the Tax Lien Defendants made themselves completely responsible for ensuring that Plaintiffs tax liens, on the one hand, and the ultimate buyer's money, on the other hand, were successfully exchanged.

**A.   The Tax Lien Purchase and Sale Agreement**

30.     For each trade, Plaintiffs ESC, EB 1EMIALA, LLC, and/or EB 2EMIALA, LLC entered into a Tax Lien Purchase and Sale Agreement ("Purchase and Sale Agreements") with Defendant LienClear – 0001 ("LienClear 1").  The Purchase and Sale Agreements were identical in sum and substance across each trade. *See* **Exhibit A**, at 2-10.

31.     The Purchase and Sale Agreement provided for Plaintiffs to sell and LienClear 1 to buy the tax liens at issue in the transaction.  LienClear 1 was not the ultimate buyer in these transactions, but a passthrough entity that conveyed the titles to the ultimate buyer.

32.     Under the Escrow Agreement, LienClear 1 was required to deposit the purchase price, along with other fees, into an escrow account. LienClear 1 was required to hold the funds in escrow pursuant to the terms of an Escrow Agreement, until the date that tax liens were transferred to LienClear 1 through "the execution, endorsement, delivery and filing" of all required documents.  Upon the transfer of tax liens to LienClear 1, the funds in escrow were to be disbursed to Plaintiffs.

**B.   The Escrow Agreement**

33.     For each trade, Plaintiffs ESC, EB 1EMIALA, LLC, and/or EB 2EMIALA, LLC entered into an Escrow Agreement with LienClear 1, and Defendant LienClear – 0002 ("LienClear 2"), acting as Escrow Agent.  The Escrow Agreements were identical in sum and substance across each trade.  *See* **Exhibit A**, at 11-33.

34.     The Escrow Agreement set out the terms and conditions under which LienClear 2 would "accept, hold and disburse" the funds that LienClear 1 deposited into the escrow account. LienClear 2 was required to hold the funds until they were disbursed consistent with, among other things, (a) instructions from the "Servicer," an entity described in greater detail

below; (b) an agreed upon schedule; or, (c) a joint written direction from the representatives of both LienClear 1 and Plaintiffs. Under the agreed upon schedule, LienClear 2 was to disburse funds from the escrow account to Plaintiffs upon receiving certification that the relevant tax liens were successfully transferred to LienClear 1.

35.     In the event any dispute or uncertainty arose regarding the appropriate disbursement of funds from the escrow account, LienClear 2 was empowered to either suspend performance of its obligations until the dispute or uncertainty was resolved to LienClear 2's satisfaction, or to petition any court of competent jurisdiction for instructions as to the dispute or uncertainty.

### C.  The Servicer Agreement

36.     For each trade, Plaintiffs ESC, EB 1EMIALA, LLC, and/or EB 2EMIALA, LLC entered into a Servicer Agreement with LienClear 1, and LienClear, LLC ("LienClear"), acting as Servicer.  The Servicer Agreements were identical in sum and substance across each trade. *See* **Exhibit A**, at 34-43.

37.     Pursuant to the Servicer Agreement, LienClear was responsible for performing all actions necessary to effectuate the transfer of ownership of the tax liens from Plaintiffs to LienClear 1. These actions included delivering a certificate to the escrow agent confirming the transfer of tax liens from Plaintiffs to LienClear 1 such that the appropriate funds could be transferred to Plaintiffs from the escrow account.

### D.  The Four Trades at Issue

38.     On June 27, 2018, Plaintiffs ESC placed a trade with BloxTrade to sell 41 tax lien certificates in the State of Alabama for a purchase price of $413,635.99. BloxTrade confirmed that the trade became effective on June 28, 2018. A true and correct copy of the transaction

confirmation for this trade is attached to this complaint as **Exhibit B**. In August 2018, Plaintiffs received confirmation that title to the tax liens was successfully transferred to the ultimate buyers, at which point the purchase price became due and owing to Plaintiffs.

39.     On September 28, 2018, Plaintiffs EB 1EMIALA, LLC and EB 2EMIALA, LLC placed a trade with BloxTrade to sell 242 tax lien certificates in the State of Alabama for a purchase price of $834,291.64. BloxTrade confirmed that the trade became effective on October 1, 2018. A true and correct copy of the transaction confirmation for this trade is attached to this complaint as **Exhibit C**. In January 2019, Plaintiffs received confirmation that title to the tax liens was successfully transferred to the ultimate buyers, at which point the purchase price become due and owing to Plaintiffs.

40.     On November 21, 2018, ESC placed a trade with BloxTrade to sell 18 tax lien certificates in the State of New Jersey for a purchase price of $450,384.95. BloxTrade confirmed that the trade became effective on November 26, 2018.  A true and correct copy of the transaction confirmation for this trade is attached to this complaint as **Exhibit D**. In January 2019, Plaintiffs received confirmation that title to the tax liens was successfully transferred to the ultimate buyers, at which point the purchase price become due and owing to Plaintiffs.

41.     On December 6, 2018, ESC placed a trade with BloxTrade to sell 666 tax lien certificates in the State of New Jersey for a purchase price of $1,828,267.72. BloxTrade confirmed that the trade became effective on December 6, 2018. A true and correct copy of the transaction confirmation for this trade is attached to this complaint as **Exhibit E**. In March 2019, Plaintiffs received confirmation that title to the tax liens was successfully transferred to the ultimate buyers, at which point the purchase price became due and owing to Plaintiffs.

### E.   Defendants' Withdrawal of Funds  from the Escrow Account

42.     By January 1, 2019, title to the tax liens comprising all four of the trades at issue had been fully transferred from Plaintiffs to the buyer.  This entitled Plaintiffs, under the parties' agreements, to receive the balance of the escrow accounts, in the amount of $3.5 million.

43.     However, Defendants breached their contractual obligations to hold onto the funds in the escrow accounts until the conditions for their disbursement had been met.  Instead, in 2018, Defendants secretly withdrew the $3.5 million in the escrow account, in breach of the Escrow Agreements.

44.     As Plaintiffs later learned, McOsker had unilaterally decided to invest the proceeds of the escrow accounts into, *inter alia*, the Investment Defendants, which he owned and controlled, for his personal benefit. Among other investments, McOsker purchased a volleyball team and a coffee farm, and acquired intellectual property on behalf of several of the Investment Defendants, of which Plaintiffs have no ownership.

### F.   All Tax Lien Defendants are Alter Egos of Defendant McOsker

45.     McOsker perpetrated the wrongdoing at issue in this case through the Tax Lien Defendants. The Tax Lien Defendants were not truly distinct entities, but agents of McOsker.

46.     McOsker is the 100% owner of each of the Tax Lien Defendants and completely controls and dominates their operations.  During the events described above, McOsker used these businesses to engage in wrongdoing and to further his own interests by converting funds from the escrow account owed to Plaintiffs for his own personal investments.

47.     McOsker ignored the corporate distinctiveness of these entities in converting the funds from the escrow account insofar as any transfer of such funds required independent action on the part of each Tax Lien Defendant.

48.     Each Tax Lien Defendant is undercapitalized and lacks corporate formalities.

49.     McOsker shares common office space, addresses, and phone numbers with the Tax Lien Defendants.

50.     McOsker has attempted to hide behind the Tax Lien Defendants, while benefiting personally from the Tax Lien Defendants' blatant breaches of the agreements described above and conversion of the funds owed to Plaintiffs.  The Court should pierce the corporate veil of the Tax Lien Defendants and hold McOsker personally liable to Plaintiffs.

### G.  All Tax Lien Defendants are Alter Egos of Each Other

51.     Each of the Tax Lien Defendants was used by McOsker to engage in wrongful conduct and convert funds in the escrow account owed to Plaintiffs.

52.     The Tax Lien Defendants have inadequate capitalization, as evidenced by their inability to make the required escrow payments to Plaintiffs.

53.     There is substantial overlap in ownership, officers, directors and personnel between and among the Tax Lien Defendants. Moreover, the Tax Lien Defendants share common office spaces, addresses, and phone numbers in Puerto Rico.

54.     As part of the sale of Plaintiffs' tax liens, the Tax Lien Defendants did not act at arm's length towards each other, despite contractual obligations to do so, but rather engaged in conflicted, interested transactions.

55.     The Tax Lien Defendants consider and treat all their respective assets and property as collective assets and property.

56.     The Tax Lien Defendants are alter egos of each other and must be held liable for the breach of the agreements between the parties and conversion of funds from the escrow account owed to Plaintiffs.

## V.  CLAIMS FOR RELIEF

### COUNT I
### BREACH OF THE ESCROW AGREEMENTS
### (AGAINST ALL DEFENDANTS)

57.     Plaintiffs repeat and reallege every allegation as if set forth and incorporated herein.

58.     Under the Escrow Agreements, LienClear 2 was required to hold all funds in escrow unless a condition for disbursement under the Escrow Agreements occurred – e.g., (A) an instruction from the Servicer; (B) an event on the agreed upon schedule; or, (C) a joint written direction from the representatives of both LienClear 1 and Plaintiffs.

59.     An event on the agreed upon schedule for disbursement of funds has occurred – namely, title to the tax lien certificates at issue has successfully been transferred to LienClear 1.

60.     Defendants have willfully failed and refused to disburse the funds to Plaintiffs, despite the formal transfer of title for all tax liens to LienClear 1, in breach of the Escrow Agreements.

61.     As a result, Plaintiffs have been damaged in an amount to be determined at trial.

### COUNT II
### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING –
### PURCHASE AND SALE, ESCROW, AND SERVICER AGREEMENTS
### (AGAINST ALL DEFENDANTS)

62.     Plaintiffs repeat and reallege every allegation as if set forth and incorporated herein.

63.     Defendants owed Plaintiffs a duty of good faith and fair dealing in performing their obligations under the Purchase and Sale, Escrow, and Servicer Agreements, including their obligation to disburse funds to Plaintiffs in accordance with the terms of the Escrow Agreements.

64.     Defendants breached their duty of good faith and fair dealing by unfairly and in bad faith converting funds from the escrow account owed to Plaintiffs.

65.     As a result, Plaintiffs have been damaged in an amount to be determined at trial.

**COUNT III**
**CONVERSION**
**(AGAINST ALL DEFENDANTS)**

66.     Plaintiffs repeat and reallege every allegation as if set forth and incorporated herein.

67.     Defendants' actions in withdrawing the amounts contained in the escrow account despite Plaintiffs' entitlement to such amounts constitutes an improper exercise of dominion and control over Plaintiffs' property.

68.     Defendants' wrongful exercise of dominion and control over Plaintiffs' funds constitutes a conversion of those funds.

69.     As a result, Plaintiffs have been damaged in an amount to be determined at trial.

**COUNT IV**
**UNJUST ENRICHMENT**
**(AGAINST ALL DEFENDANTS)**

70.     Plaintiffs repeat and reallege every allegation as if set forth and incorporated herein.

71.     Defendants received and obtained a benefit in the form of the funds wrongfully withheld from Plaintiffs.

72.     Such benefit is at the expense and detriment of Plaintiffs, and Defendants have knowledge and/or appreciation of such benefit.

73.     Acceptance and retention of such benefit under the circumstances by Defendants without repayment to Plaintiffs would be inequitable and unjust.

74.     Defendants have been unjustly enriched and Plaintiffs are entitled to payment of the aforementioned monies plus interest, attorney's fees and costs paid.

**COUNT V**
**MONEY HAD AND RECEIVED**
**(AGAINST ALL DEFENDANTS)**

75.     Plaintiffs repeat and reallege every allegation as if set forth and incorporate herein.

76.     The Investment Defendants received money belonging to Plaintiffs in connection with the tax lien trades.

77.     The Investment Defendants benefitted from the receipt of the money belonging to Plaintiffs.

78.     Under principles of equity and good conscience, the Investment Defendants should not be permitted to keep the money.

**VI. PRAYER FOR RELIEF**

**WHEREFORE**, in view of the foregoing, Plaintiffs respectfully request that this Honorable court grant the instant complaint and enter judgment in their favor and against Defendants: (i) attaching Defendants' assets; (ii) preliminarily and permanently enjoining Defendants from paying out of ordinary course; (iii) awarding damages in favor of Plaintiffs and against Defendants in an amount to be determined at trial; (iv) awarding Plaintiffs its costs and expenses incurred in this action, including its reasonable attorneys' fees; and (v) granting such other and further relief as may be just and proper.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 18th day of June, 2019.

**VICENTE & CUEBAS**
P.O. Box 11609
San Juan, PR  00910-1609
Telephone (787) 751-8000
Facsimile   (787) 756-5250

*/s/ Harold D. Vicente*
**Harold D. Vicente**
USDC-PR  117711
*hvicente@vclawpr.com*

*/s/ Steven Liong-Rodríguez*
**Steven Liong-Rodríguez**
USDC-PR  303011
*sliong@vclawpr.com*

## VERIFICATION

I, John Hanratty, an adult, married and resident of San Juan, Puerto Rico declare the following under penalty of perjury, pursuant to the Laws of the United States of America:

1.  I am the Managing Director of Ebury Street Capital, LLC, which runs the day-to-day operations of the remaining Plaintiffs.

2.  I have examined the foregoing Verified Complaint and its supporting exhibits and that, to the best of my knowledge and belief and/or pursuant to information and documents in my possession and all allegations herein, were prepared with the advice and assistance of legal counsel, are true and correct.

Executed in San Juan, Puerto Rico, on this 14th day of June, 2019.

/s/ John Hanratty