**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| EBURY STREET CAPITAL, LLC, EB 1EMIALA, LLC, EB 2EMIALA, LLC, EBURY FUND 1 NJ LLC, and EBURY FUND 2 NJ, LLC<br><br>Plaintiffs<br><br>v.<br><br>THOMAS R. MCOSKER, LIENCLEAR – 0001, LLC, LIENCLEAR – 0002, LLC, LIENCLEAR, LLC, BLOXTRADE, LLC, BCMG INTERNATIONAL, LLC, GRICKLEGRASS FARMS, LLC, 100 AKER WOOD, LLC, BCMG TECHNOLOGIES, LLC, MAPPLUS LLC, BCMG SERVICES, LLC, MCOSKER HOLDINGS, LLC, STONEWALL HOLDINGS, LLC, BCMG, LLC, ECHO RECOVERY SOLUTIONS, LLC, and CAMBISPR, LLC<br><br>Defendants | Civil No.  19-1598<br><br>DAMAGES FOR BREACH OF CONTRACT, BAD FAITH, WRONGFUL CONVERSION, UNJUST ENRICHMENT, MONEY HAD AND RECEIVED<br><br>JURY TRIAL DEMANDED |

**MOTION FOR *EX PARTE* ATTACHMENT TO**
**SECURE SATISFACTION OF JUDGMENT**

**TO THE HONORABLE COURT:**

COME NOW, Plaintiffs **EBURY STREET CAPITAL, LLC ("ESC"); EBURY FUND 1 NJ, LLC; EBURY FUND 2 NJ, LLC; EB 1EMIALA, LLC; AND, EB 2EMIALA, LLC**, through the undersigned counsel, and to this Honorable Court very respectfully STATE and PRAY as follows:

**INTRODUCTION**

On June 18, 2019, Plaintiffs filed a *Verified Complaint* (ECF No. 1) against Thomas R. McOsker ("McOsker") and the companies which he wholly owns, to wit: LienClear, LLC;

LienClear – 0001, LLC; LienClear – 0002, LLC; Bloxtrade, LLC; BCMG International, LLC; Grickelgrass Farms, LLC; 100 Aker Wood, LLC; BCMG Technologies, LLC; MAPPLUS, LLC; BCMG Services, LLC; and McOsker Holdings, LLC; Stonewall Holdings, LLC; BCMG, LLC; Echo Recovery Solutions, LLC; and CAMBISPR, LLC (collectively, the "Defendant Companies").[1] Plaintiffs claim that McOsker, using the Defendant Companies as fronts, wrongfully converted $3.5 million in funds owed to Plaintiffs, related to the sale of approximately 1,000 tax liens, which are grouped in four separate tax lien trades. All four tax lien trades are governed by the same set of three agreements from September through December 2018— a *Tax Lien Purchase and Sale Agreement*, an *Escrow Agreement*, and a *Servicer Agreement* (jointly, the "Agreements")— a sample of which is attached herein as **Exhibit A**. Under these Agreements, the tax lien trades were structured so that Plaintiffs were the sellers, other parties were the ultimate buyers, whereas McOsker and the Tax Lien Defendants acted as middlemen.

Under the Agreements, the Tax Lien Defendants were required to hold onto the funds in the escrow accounts until the conditions for their disbursement had been met. *See* **Exhibit A** at 11-33. By January 1, 2019, title to the tax liens on <u>all four of the trades had been fully transferred</u> from Plaintiffs to the buyer, at which time Plaintiffs were entitled to receive the balance of the escrow accounts in the amount of over <u>$3.5 million</u>. A true and correct copy of the transaction confirmations for all four trades are attached to this motion as **Exhibits B, C, D, and E**. Despite Plaintiffs' requests for payment, Defendants breached their contractual

---

[1] For clarity purposes, where necessary, the first 4 Defendant Companies (as listed herein) will be referred to as the "Tax Lien Defendants," while the rest will be referred to as the "Investment Defendants." *See* (ECF No. 1 at 3-4).

obligations to hold onto the funds in the escrow accounts. This means that the debt owed to Plaintiffs is liquid, due, and payable.

McOsker has employed a systematic scheme of lies and misrepresentations to avoid payment of over $3.5 million in funds contractually owed to Plaintiffs. An *Affidavit* prepared by the Managing Director of ESC, John Hanratty, which details these extraordinary circumstances, among others, is attached as **Exhibit F**. These circumstances are further evinced with correspondence between the parties, attached as **Exhibit G**. This documentary evidence also evinces recent exigent circumstances warranting this Court's immediate intervention, to wit: McOsker has depleted the escrow-funds in order to finance a panoply of private investments unrelated to Plaintiffs, and his Defendant Companies have ran out of cash. Notably, McOsker has admitted to having used the escrow-funds for personal investments unrelated to Plaintiffs. Consequently, Plaintiffs submit that an *ex parte* order attaching any and all of Defendants' assets is necessary in order to secure judgment.

## DISCUSSION

Under Fed.R.Civ.P. 64, this Court has authority to issue provisional and prejudgment relief to secure property in order to ensure satisfaction of a potential judgment in favor of plaintiff. "Such provisional remedies are available under the circumstances and in the manner provided by the law of the state in which the district court sits." *Cisco Systems Corp. v. Global Hotel Management Inc.*, 712 F.Supp.2d 22, 23 (D.P.R. 2010). Puerto Rico Rule of Civil Procedure 56.1 ("Rule 56.1") provides that "[i]n every action, before or after entering judgment, and on motion of claimant, the court may issue any provisional order it may deem necessary to secure satisfaction of the judgment." P.R. Laws Ann. Tit. 32, App. VI, R. 56.1. This rule "confers upon the court sufficient flexibility to issue the measures which it deems

necessary or convenient, according to the circumstances of the case, to secure the effectiveness of the judgments." *HMG Property Investors, Inc. v. Parque Indus. Rio Canas, Inc.*, 847 F.2d 908, 914 (1st Cir. 1988) (quoting *F.D. Rich Co. v. Superior Court*, 99 D.P.R. 158, 176-77 (1970)).

Moreover, in this district an attachment order may be entered without notice to the adverse party and a pre-attachment hearing, if claimant demonstrates any of the following circumstances are present: "(1) a previous proprietary interest in the object to be attached, (2) the existence of <u>extraordinary circumstances</u>, or (3) the <u>probability of prevailing on the merits</u> through the use of authentic documentary evidence which shows there is a debt liquid, due, and payable." *Cisco Systems Corp. v. Global Hotel Management, Inc.*, 712 F.Supp.2d at 23 (emphasis added).

For starters, the authentic documentary evidence presented by Plaintiffs establish that they are <u>likely to prevail on the merits</u>. Tax Lien Defendants' contractual obligation to hold onto the funds in the escrow accounts until the conditions for their disbursement had been met, is patent under the Agreements. *See* **Exhibit A**. The base amount in question for all four trades is upwards of $3.5 million, as evidenced by the transaction confirmations. *See* **Exhibits B, C, D, and E**. These confirmations also show that by January 2019, title to the tax liens had been fully transferred from Plaintiffs to the buyers, at which time the purchase price for all four trades became due and owing to Plaintiffs. Afterwards, on <u>multiple occasions</u> Plaintiffs requested payment of the money owed, but the good faith efforts were in vain. *See* emails between the parties during February 2019, **Exhibit G**, at 4-6. As recently as this month of June 2019, Plaintiffs reiterated their request for information on the escrow

funds, specifically asking to be shown the escrow balance in real time, again to no avail. *Id*. at 1. As advanced, this means that the debt owed to Plaintiffs is liquid, due, and payable.

In addition, recent extraordinary circumstances have transpired that warrant this Court's immediate intervention, as evidenced by the *Affidavit* prepared by John Hanratty, Managing Director of ESC, and the email correspondence between the parties, discussed below.

In his *Affidavit*, John Hanratty asserted that he has personal knowledge of the facts alleged in the *Verified Complaint*, and described how around October 2018, he was <u>informed by McOsker that funds from the escrow account belonging to Plaintiffs had been withdrawn to be used to fund the Defendant entities</u>. **Exhibit F** at 1-2. According to Hanratty, McOsker also spent large portions of the escrow funds owed to Plaintiffs on personal items, which included purchasing the Naranjito Changas Volleyball Team for ($82,700), a 500-acre coffee farm at Las Marías for (for $675,000), and payed salaries to himself ( for $150,000 annually) and to his girlfriend (for $75,000 annually). *Id*. at 3. Hanratty describes in detail the <u>systematic employment of lies and misrepresentations</u> on the part of Defendants. For instance, despite McOsker's assertions to Hanratty to the effect that McOsker had never previously misappropriated funds from his companies' escrow accounts, Hanratty later learned from Andrew Kernan, CFO of BCMG Services, LLC, that the escrow funds were misappropriated by McOsker in order to "clean up" escrow balances from 2017. *Id*. Similarly, upon asking whether there were any open transactions with the escrow funds, Hanratty was informed that there were none. *Id*. at 5. Hanratty later learned that there was in fact an open transaction with an escrow balance of $150,000 from unrelated parties. *Id*.

Hanratty also ascertained that McOsker and his employees provided Hanratty information to the effect that McOsker had used the escrow funds owed to Plaintiffs to acquire intellectual property on behalf of several of the Defendant entities, of which the Plaintiffs have no ownership, as well as to cover his employees' payroll, depleting the Defendant entities. *Id.* at 4. Some of these funds were used to cover expenses later included in the income tax returns of the Defendant entities for the taxable year 2018 and used as evidence to claim tax credits under Puerto Rico Act Number 73 of May 28, 2008, as amended, before the Office of Industrial Tax Exemption ("OITE"), the Puerto Rico Department of Economic Development and Commerce ("DDEC") and the Puerto Rico Department of Treasury ("Treasury"). *Id.*

Hanratty further stated that the Defendant Companies have current past-due payables in excess of $600,000, and that McOsker is not satisfying his obligations to his employees' payroll and payments to independent contractors. *Id.* at 5. The precarious-economic situation of the Defendant Companies is further supported by correspondence from the Defendants. For instance, on February 8, 2019, Hanratty was informed by Defendants that cash is limited as an excuse to withhold payment owed to Plaintiffs, essentially admitting to misappropriation of the escrow funds. **Exhibit G**, at 4-5. This much was later admitted by McOsker himself on March 21, 2019. *Id.* at 3. As recent as June 13, 2019, McOsker again admitted to Hanratty that he had no available means of repayment. **Exhibit F**, at 5.

In *Citibank, N.A. v. Allied Management Group, Inc.*, 466 F.Supp.2d 403, 408 (D.P.R. 2006), this Court held that affidavit, which is a statement "sworn before a notary [...] qualifies as an authentic document [...]." As such, Hanratty's *Affidavit* constitutes authentic

documentary evidence that establishes the exigent circumstances discussed above. As discussed, the circumstances described therein are further supported by the correspondence between the parties. These extraordinary circumstances militate in favor of this Court's discretionary authority to issue an *ex parte* order for attachment in order to safeguard Plaintiffs' ability to recover the substantial sum of money owed to them by Defendants. These particular circumstances heavily tilt the Court's discretion in favor of such course of action, *vis a vis* Defendants' right to an attachment hearing. After all, under Puerto Rico law, Defendants have a right to a post-attachment hearing in which the parties whose property rights were affected by the attachment are given an opportunity to challenge a seizure of their property." *Id*. at 409. Thus, Defendants' due process rights will be adequately safeguarded if the Court issues an *ex parte* order, as Plaintiffs have shown here that it must under the circumstances presented herein.

Hanratty's *Affidavit* also supports the proposition that the Defendant Companies have essentially been run out of cash by McOsker. The risk that Defendants will not be able to satisfy the judgment that may be entered in favor of Plaintiffs is real and patent, which is why this Court's immediate intervention is necessary. For these same reasons, Plaintiffs also request an order for expedited discovery, in order to serve Defendants with interrogatories and requests for documents relevant to this motion for attachment, pursuant to Fed.R.Civ.P. 16(b)(2)(A), and 16(d).

In sum, Plaintiffs submit that the documentary evidence presented to the Court overwhelmingly establish extraordinary circumstances and a high-probability of prevailing on the merits, warranting this Court's immediate intervention to issue an order of attachment; and to allow Plaintiffs to conduct expedited discovery in order to ascertain

where the money owed to Plaintiffs has been transferred to, the extent of the Defendant Companies' precarious economic situation, and all assets belonging to Defendants.

**WHEREFORE**, in view of the foregoing, Plaintiffs respectfully request that this Honorable Court issue the following: (i) an *ex parte* order attaching all of Defendants' assets for a sum of no less than $3.5 million, which assets include, but are not limited to that certain application for tax credits under Puerto Rico Act Number 73 of May 28, 2008, as amended, which was filed before the DDEC, and which status is currently unknown, as the same may have been approved by the OITE and the DDEC, and which may further result in the issuance of a tax credit by Treasury, along with any other assets that may result from any such application package and (ii) an order expediting discovery in order to obtain information about Defendants' bank accounts, lines of credit, and any other assets.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 21st day of June, 2019.

> **VICENTE & CUEBAS**
> P.O. Box 11609
> San Juan, PR  00910-1609
> Telephone (787) 751-8000
> Facsimile  (787) 756-5250
>
> */s/ Harold D. Vicente*
> **Harold D. Vicente**
> USDC-PR  117711
> *hvicente@vclawpr.com*
>
> */s/ Steven Liong-Rodríguez*
> **Steven Liong-Rodríguez**
> USDC-PR  303011
> *sliong@vclawpr.com*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this day I electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF, which will send a notification to counsel of record. Defendants will be served with process in the upcoming days, which will include copies of the *Verified Complaint* and the foregoing motion for attachment.

In San Juan, Puerto Rico, on June 21, 2019.

*/s/ Harold D. Vicente*
**Harold D. Vicente**