

# LienClear Documents: P&S, Escrow, Servicer

Trade Confirmation Number:0584120620180066601

# TAX LIEN PURCHASE AND SALE AGREEMENT

### TAX LIEN PURCHASE AND SALE AGREEMENT

This Tax Lien Purchase Agreement (this " Agreement") is made as of December 6, 2018 (the "Effective Date"), by and among Ebury Street Capital, LLC (the "Seller") and LienClear-0001, LLC (the "Buyer").

### PRELIMINARY STATEMENTS

WHEREAS, Seller is the owner of certain tax liens that are identified in the Tax Lien Schedule (the " Tax Lien Schedule") attached hereto as Schedule 1 (the "Tax Liens");

WHEREAS, Seller wishes to sell to Buyer, and Buyer wishes to acquire from Seller, such Tax Liens identified on the Tax Lien Schedule, on the terms and conditions further described herein (the " Transaction");

WHEREAS, in connection with the Transaction, Buyer and Seller desire to enter into an escrow agreement of even date herewith (" Escrow Agreement") in order to engage a third party escrow agent ("Escrow Agent") to perform escrow services in connection with the Transaction; and

WHEREAS, in connection with the Transaction, Buyer and Seller desire to enter into an services agreement of even date herewith (" Services Agreement") in order to engage a third party servicer ("Servicer") to perform the transfer and assignment of the Tax Liens in connection with the Transaction.

NOW, THEREFORE, in consideration of the mutual covenants and conditions set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto do hereby agree as follows:

### ARTICLE I
### DEFINITIONS

Section 1.01.    <u>Definitions</u>. In addition to the terms defined in the preambles and elsewhere in this Agreement, the following definitions apply in this Agreement.

"<u>Applicable Law</u>" shall mean any applicable federal, state or local law, rule, ordinance, regulation or order, each as amended to the date of this Agreement.

"<u>Brokerage Fees</u>" shall mean the brokerage fees due by Buyer and Seller in connection with the Transaction as set forth on the trade confirmation(s) received and approved by Buyer and Seller and as further detailed in the "Brokerage Fee" section of <u>Exhibit A</u>. For the Buyer, such fees shall be paid to the Escrow Agent and disbursed in accordance with the Escrow Agreement. For the Seller, such fees will be netted out of the Purchase Price and disbursed in accordance with the Escrow Agreement.

"<u>Closing Date</u>" has the meaning set forth in Section 3.02.

"<u>Collections</u>" shall mean all receipts or proceeds of any kind from the redemption, refund or cancellation of a Tax Lien.

"<u>Excluded Tax Liens</u>" are any Tax Liens that Seller is unable to transfer and assign to Buyer within sixty (60) days of the Effective Date, including as a result of a redemption of any Tax Lien prior to the Effective Date, due to the certificate being involved in a Bankruptcy procedure, due to the certificate being involved in a County-Initiated Tax Deed Acquisition procedure or due to the lien encumbering a property on the county's List of Lands Available for Sale.

"<u>Fee Schedule</u>" shall mean the schedule of Transaction Fees set forth on <u>Exhibit A</u>.

"<u>Losses</u>" shall mean any claims, demands, actions, causes of action, judgments, damages, recoveries, fines, penalties, interest, liabilities, fees, costs, expenses and other losses, including reasonable attorneys' fees and court costs.

"<u>Purchase Price</u>" has the meaning set forth in Section 2.01.

"<u>Transaction Fees</u>" shall mean, other than Brokerage Fees, all transfer, clearing, servicing, filing, escrow, administrative and processing fees related to the Transaction as set forth on the Fee Schedule. For the Buyer, such fees shall be paid to the Escrow Agent and disbursed in accordance with the Escrow Agreement. For the Seller, such fees will be netted out of the Purchase Price and disbursed in accordance with the Escrow Agreement.

## ARTICLE II
## PURCHASE AND SALE OF ASSETS

Section 2.01.    Sale of Tax Liens.  In consideration of Buyer's payment of $1,828,267.72 (the "Purchase Price"), Seller hereby sells, transfers, conveys and assigns to Buyer, without recourse, representation or warranty (except as expressly set forth herein), all of Seller's right, title and interest in, to, and under the Tax Liens identified on the Tax Lien Schedule, including the right to receive all Collections in respect thereof on and after the Effective Date.

Section 2.02.    Assumed Liabilities.  Buyer shall perform and discharge all obligations related to the Tax Liens which arise on or after the date hereof.

## ARTICLE III
## CLOSING DATE AND POST-CLOSING ITEMS

Section 3.01.    Payment of Purchase Price and Fees; Escrow.  Simultaneously with the execution of this Agreement, Buyer and Seller shall enter into the Escrow Agreement with Escrow Agent.  Buyer shall pay to Escrow Agent (i) the Purchase Price, (ii) Buyer's Brokerage Fee, and (iii) Buyer's portion of the Transaction Fees, by cashier's check or wire transfer for deposit into Escrow Agent's account no later than December 7, 2018 with documented proof thereof provided to Seller no later than December 10, 2018.

Section 3.02.    Closing.  The "Closing Date" with respect to the purchase and sale of the Tax Liens shall be the date on which ownership of all Tax Liens (excluding any Excluded Tax Liens, as applicable) has been transferred to Buyer through the execution, endorsement, delivery and filing of all applicable documents and certificates as is required by the applicable taxing authority and under Applicable Laws as such is certified by Servicer in accordance with the Servicing Agreement. Upon delivery of the foregoing and certification thereof by Servicer, the Purchase Price (as adjusted by subtracting that portion of the Purchase Price allocable to any Excluded Tax Liens as set forth on the Tax Lien Schedule (as applicable) and net of Seller's Brokerage Fee and Transaction Fees) shall be disbursed to Seller in accordance with the Escrow Agreement.  Any portion of the Purchase Price remaining in Escrow Agent's account after the Closing Date that is related to the exclusion of Excluded Tax Liens shall be returned to the Buyer.

Section 3.03.    Collections Received On or After the Effective Date.  To the extent Seller receives any Collections in respect of the Tax Liens on or after the Effective Date, Seller shall hold such amounts in trust for the Buyer. The Seller shall notify the Buyer, on or before the tenth

(10th) day of each month, of the amount of Collections received with respect to each Tax Lien sold to the Buyer hereunder during the prior month. Within ten (10) days thereafter the Seller shall promptly deliver such funds to the Buyer by a wire transfer to an account designated in writing by the Buyer. The Seller's obligation to provide such information and to deliver such Collections shall terminate upon completion of the applicable taxing authority's transfer of registered legal title of the Tax Liens to the Buyer or its designee.

Section 3.04.    Transfer of Title; Servicer.

(a)  Transfer of Title; Servicer.  Simultaneously with the execution of this Agreement, Buyer and Seller shall enter into the Servicing Agreement with Servicer. Buyer and Seller shall, and shall cause Servicer to, take all actions required by the applicable taxing authority and Applicable Law to transfer legal title of the Tax Liens (excluding Excluded Tax Liens, as applicable) to the Buyer or its designee. As of the date hereof, and upon payment in full of the Purchase Price, Buyer shall be the 100% beneficial owner of the Tax Liens and shall be entitled to all Collections on the Tax Liens received on and after the Effective Date (excluding Collections related to Excluded Tax Liens, as applicable), regardless of when the transfer of registered legal title occurs.

(b)  Costs Related to Transaction.  Buyer and Seller shall bear all costs and expenses related to the Transaction in accordance with the Fee Schedule, unless otherwise agreed to by the parties in writing.

Section 3.05.    Assurance of Further Action.  From time to time after the Closing  Date and without further consideration, each of the parties to this Agreement shall execute and deliver, or cause to be executed and delivered, such further instruments and agreements, and shall take such other actions, as any other party may reasonably request in order to more effectively effectuate the transactions contemplated by this Agreement.

ARTICLE IV

Representations

Section 4.01.    Seller's Limited Representations.  Seller hereby represents and warrants that:

(a) the Seller, it's affiliated subsidiary, or its wholly owned subsidiary is the owner of the Tax Liens, with good and valid title thereto, and with full right to sell and transfer the same
(b)  the Seller has the authority to sell the Tax Liens to Buyer;
(c)  the Tax Liens will be transferred to Buyer free and clear of all encumbrances;

(d) to the Seller's knowledge the Tax Liens are validly issued under Applicable Law;

(e) once the Purchase Price has been paid by the Buyer and delivered to the Seller in accordance with the terms hereof, the Seller shall have no further rights or claims to the Tax Liens;

(f) the Seller intends to convey to the Buyer legal title to all of the Tax Liens;

(g) Seller has the full right, power and authority, without the consent of any other person, to execute and deliver this Agreement and to perform its obligations under this Agreement and the transactions on its part contemplated hereby.

Except as expressly set forth above, Seller makes no representations or warranties with respect to the Tax Liens or any other matters.

Section 4.02.    Buyer's Limited Representations.  Buyer hereby represents and warrants that as of the date hereof:

(a)    Buyer is a limited liability company duly organized, validly existing and in good standing under the laws of the state of its formation.

(b)    Buyer has full power and authority to enter into and perform this Agreement and to purchase the Tax Liens from Seller;

(c)    This Agreement has been duly executed by the Buyer and delivered to the Seller and constitutes a legally valid and binding obligation of the Buyer, enforceable against the Buyer in accordance with its terms, except as limited by bankruptcy and laws affecting the enforcement of creditors' rights generally and equitable principles; and

(d)    The Buyer is a sophisticated party that understands the Tax Liens, its investment in the Tax Liens and the risks associated therewith.

Except as expressly set forth above, Buyer makes no representations or warranties.

Section 4.03.    Remedy for Breach of Seller's Limited Representations.  Upon discovery by Buyer, at any time during the three (3)-month period beginning on the Effective Date, of a breach of any of Seller's representations and warranties included in Section 4.01 above, Buyer shall give prompt written notice to Seller, along with evidence supporting such breach claim. Within thirty (30) calendar days after Seller receives written notice of any such breach, Seller shall use commercially reasonable efforts to cure such breach in all material respects and, if such breach cannot be cured, Buyer may pursue any other remedies available to it under this Agreement or at law or equity.

Section 4.04.  Indemnification.  Notwithstanding anything to the contrary in this Agreement, each party shall indemnify, hold harmless and, if requested by the other party in its sole and absolute discretion, defend the other party from and against any and all Losses to the extent arising out of or related to (i) a breach of this Agreement by such party, including without limitation a breach of any representation, warranty or covenant made by such party hereunder; (ii) any act or omission constituting gross negligence or willful misconduct on the part of such party; or (iii) such party's breach of any Applicable Law.

ARTICLE V

MISCELLANEOUS PROVISIONS

Section 5.01.    Amendment.  This Agreement only can be modified in a written document executed by Buyer and Seller.

Section 5.02.    Governing Law; Venue; Jurisdiction. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS. Any action to enforce or interpret this Agreement, or arising out of or relating to this Agreement involving the parties hereto, shall be brought in a federal or state court of competent jurisdiction situated in Wilmington, Delaware. Each party hereto hereby irrevocably submits to the jurisdiction and venue in such courts and waives any objection such party may have to either the jurisdiction or venue of such courts.

Section 5.03.    Notices.  All notices, requests, demands or other communications required to be given or made hereunder shall be in writing and shall be deemed to be well and sufficiently given if hand-delivered or mailed by prepaid and registered mail addressed to:

If to the Seller:  Ebury Street Capital, LLC
                   16 School Street
                   Rye, NY, 10580

Attn: John Hanratty

If to the Buyer:  LienClear-0001, LLC
                  228 Park Ave S #72536
                  New York, NY, 10003-1502

Attn:  Dan Ilany

Such notice shall be deemed to have been given, in the case of personal delivery, on the date of delivery, and where given by registered mail, on the business day of actual receipt thereof. It is understood that in the event of a threatened or actual postal disruption in the postal services in the postal area through which such notice must be sent, notice must be given personally as aforesaid or by means of printed electronic or printed telephonic communication in which case notice shall be deemed to have been given on the date of transmission thereof. Any party may change its address for notice by written communication mailed or delivered as aforesaid.

Section 5.04.  Confidentiality. Buyer and seller mutually agree to maintain all aspects of this agreement in strict confidentiality. The parties agree to not disclose, reveal or otherwise communicate either directly or indirectly information regarding this agreement to any third party except with the prior written consent of the opposing Party. Notwithstanding the above, a Party may disclose the contents of this agreement to the extent required by any applicable law, regulation or court and for the limited purpose of enforcing its rights under this Agreement.

Section 5.05.    Severability. If any part of this Agreement is held to be invalid or otherwise unenforceable, the rest of this Agreement will be considered severable and will continue in full force.

Section 5.06.    Assignment. Either party may assign this Agreement to another party upon providing written notice thereof to the other party.

Section 5.07.    Binding Effect; Third-Party Beneficiary. This Agreement benefits and is binding on the parties hereto and their respective successors and permitted assigns. No person or entity other than a party to this Agreement shall have any rights with respect to the enforcement of any of the rights or obligations hereunder.

Section 5.08.    Merger and Integration. This Agreement contains all of the terms and conditions relating to its subject matter to which the parties have agreed. All prior understandings of any kind are superseded by this Agreement.

Section 5.09.    Headings. The headings are for reference only and must not affect the interpretation of this Agreement.

{Signature Page Follows}

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

**BUYER**

By: _____

Name:    Ben Edwards

Title:    Authorized Signatory

**SELLER**

By:    *John Hauratty* _____

Name:    John Hanratty

Title:    Authorized Signer

# EXHIBIT A - FEE SCHEDULE

| Description | Buyer | Seller |
|---|---|---|
| Purchase Price for Tax Liens: | $1,828,267.72 | N/A |
| Brokerage Fees: | $0 | $18,848.12 |
| Transaction Fees: | | |
| Escrow Fees: | $500 | $500 |
| Municipal Transfer Fees: | $2,318.40 (estimated passthrough cost) | $2,318.40 (estimated passthrough cost) |
| Administative Fees: | $250 | $250 |
| Servicer Fees: | $4,431.60 | $4,431.60 |
| Total | $1,835,767.72 | $26,348.12 |

# Escrow Agreement

**THIS ESCROW AGREEMENT**, dated as of December 6, 2018 ("Escrow Agreement"), is by and among LienClear-0001, LLC ("Buyer"); Ebury Street Capital, LLC ("Seller"); and LienClear-0002, LLC, as escrow agent hereunder ("Escrow Agent").

## BACKGROUND

A. Buyer and Seller have entered into a Tax Lien Purchase and Sale Agreement (as amended, the "Underlying Agreement"), dated as of December 6, 2018 (the "Effective Date") pursuant to which in consideration of Buyer's payment of $1,828,267.72 (the "Purchase Price"), Seller hereby sells, transfers, conveys and assigns to Buyer, without recourse, representation or warranty (except as expressly set forth herein), all of Sellers right, title and interest in, to, and under the Tax Liens identified on the Tax Lien Schedule, including the right to receive all Collections in respect thereof on and after the Effective Date. Solely as between Buyer and Seller, capitalized terms used herein and not otherwise defined shall have the meanings assigned to such terms in the Underlying Agreement.

B. Escrow Agent has agreed to accept, hold, and disburse the funds deposited with it and the earnings thereon in accordance with the terms of this Escrow Agreement.

C. Buyer and Seller have appointed the Representatives (as defined below) to represent them for all purposes in connection with the funds to be deposited with Escrow Agent and this Escrow Agreement.

**NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, for themselves, their successors and assigns, hereby agree as follows:

1.      Definitions.  The following terms shall have the following meanings when used herein:

"Escrow Funds" shall mean the funds deposited with Escrow Agent pursuant to Section 3 of this Agreement, together with any interest and other income thereon.

"Escrow Period" shall mean the period commencing on the Effective Date  and ending at the close of Escrow Agent's business day NINETY (90) calendar days after the Effective

Date, unless earlier terminated pursuant to this Escrow Agreement.

"Indemnified Party" shall have the meaning set forth in Section 11.

"Joint Written Direction" shall mean a written direction executed by the Representatives and directing Escrow Agent to disburse all or a portion of the Escrow Funds or to take or refrain from taking any other action pursuant to this Escrow Agreement.

"Buyer Representative" shall mean the person(s) so designated on Schedule C hereto or any other person designated in a writing signed by Buyer and delivered to Escrow Agent and the Seller Representative in accordance with the notice provisions of this Escrow Agreement, to act as its representative under this Escrow Agreement.

"Representatives" shall mean the Buyer Representative and the Seller Representative.

"Seller Representative" shall mean the person(s) so designated on Schedule C hereto or any other person designated, in a writing signed by Seller and delivered to Escrow Agent and the Buyer Representative in accordance with the notice provisions of this Escrow Agreement, to act as its representative under this Escrow Agreement.

2.      Appointment of and Acceptance by Escrow Agent.  Buyer and Seller hereby appoint Escrow Agent to serve as escrow agent hereunder.  Escrow Agent hereby accepts such appointment and, upon receipt by wire transfer of the Escrow Funds in accordance with Section 3 below, agrees to hold, invest and disburse the Escrow Funds in accordance with this Escrow Agreement.

3.      Deposit of Escrow Funds.  Simultaneously with the execution and delivery of this Escrow Agreement, Buyer, on behalf of the Seller, will transfer the Escrow Funds in the amounts set forth in Exhibit I, by wire transfer of immediately available funds, to an account designated by Escrow Agent.

4.      Disbursements of Escrow Funds.  Escrow Agent shall disburse Escrow Funds in accordance with instructions from the Servicer or pursuant to Schedule II attached hereto or at any time and from time to time, upon receipt of, and in accordance with, a Joint Written Direction.  Such Joint Written Direction shall contain complete payment instructions, including wiring instructions or an address to which a check shall be sent.  Upon the expiration of the Escrow Period and receipt by Escrow Agent from Seller of complete payment instructions in writing, Escrow Agent shall distribute to Seller, as promptly as practicable, any remaining

Escrow Funds. Prior to any disbursement, Escrow Agent shall have received reasonable identifying information regarding the Seller such that Escrow Agent may comply with its regulatory obligations and reasonable business practices, including without limitation a completed United States Internal Revenue Service ("IRS") Form W-9 or original IRS Form W-8, as applicable. All disbursements of funds from the Escrow Funds shall be subject to the fees and claims of Escrow Agent and the Indemnified Parties pursuant to Section 11 and Section 12 below.

5.        Suspension of Performance; Disbursement into Court. If, at any time, (i) there shall exist any dispute between Buyer, Seller or the Representatives with respect to the holding or disposition of all or any portion of the Escrow Funds or any other obligations of Escrow Agent hereunder, (ii) Escrow Agent is unable to determine, to Escrow Agent's sole satisfaction, the proper disposition of all or any portion of the Escrow Funds or Escrow Agent's proper actions with respect to its obligations hereunder, or (iii) Buyer and Seller have not, within 10 calendar days of the furnishing by Escrow Agent of a notice of resignation pursuant to Section 8 hereof, appointed a successor Escrow Agent to act hereunder, then Escrow Agent may, in its sole discretion, take either or both of the following actions:

a.        suspend the performance of any of its obligations (including without limitation any disbursement obligations) under this Escrow Agreement until such dispute or uncertainty shall be resolved to the sole satisfaction of Escrow Agent or until a successor Escrow Agent shall have been appointed.

b.        petition (by means of an interpleader action or any other appropriate method) any court of competent jurisdiction, in any venue convenient to Escrow Agent, for instructions with respect to such dispute or uncertainty, and to the extent required or permitted by law, pay into such court, for holding and disposition in accordance with the instructions of such court, all Escrow Funds, after deduction and payment to Escrow Agent of all fees and expenses (including court costs and attorneys' fees) payable to, incurred by, or expected to be incurred by Escrow Agent in connection with the performance of its duties and the exercise of its rights hereunder.

Escrow Agent shall have no liability to Buyer, Seller or the Representatives, their respective owners, shareholders or members or any other person with respect to any such suspension of performance or disbursement into court, specifically including any liability or claimed liability that may arise, or be alleged to have arisen, out of or as a result of any delay in the disbursement of the Escrow Funds or any delay in or with respect to any other action required or requested of Escrow Agent.

6.    {reserved}

7.    <u>Investment of Funds</u>.  Based upon Buyer's and Seller's prior review of investment alternatives, in the absence of further specific written direction to the contrary, the Escrow Agent is directed to initially invest and reinvest the Escrow Funds in the investment indicated on Schedule B hereto. Seller may provide written instructions changing the investment of the Escrow Funds to the Escrow Agent; provided, however, that Seller warrants that it will only instruct the Escrow Agent to invest or reinvest Escrow Funds in the following:  (a) direct obligations of the United States of America or obligations the principal of and the interest on which are unconditionally guaranteed by the United State of America; (b) U.S. dollar denominated deposit accounts and certificates of deposits issued by any bank, bank and trust company, or national banking association (including Escrow Agent and its affiliates), which such deposits are either (i) insured by the Federal Deposit Insurance Corporation or a similar governmental agency, or (ii) with domestic commercial banks which have a rating on their short-term certificates of deposit on the date of purchase of "A-1" or "A-I+" by S&P or "P-1" by Moody's and maturing no more than 360 days after the date of purchase (ratings on holding companies are not considered as the rating of the bank); (c) repurchase agreements with any bank, trust company, or national banking association (including Escrow Agent and its affiliates); or (d) institutional money market funds, including funds managed by Escrow Agent or any of its affiliates; <u>provided</u> that the Escrow Agent will not be directed to invest in investments that the Escrow Agent in its sole discretion determines are not consistent with the Escrow Agent's policy or practices. Buyer and Seller acknowledge that the Escrow Agent does not have a duty nor will it undertake any duty to provide investment advice and that the Escrow Agent may conclusively rely on Seller's written investment or reinvestment instructions with inquiry, investigation or determination of compliance with this Section 7.

If Escrow Agent has not received a written instruction from Seller at any time that an investment decision must be made, Escrow Agent is directed to invest the Escrow Funds, or such portion thereof as to which no written investment instruction has been received, in the investment indicated on Schedule B hereto. All investments shall be made in the name of Escrow Agent. Notwithstanding anything to the contrary contained herein, Escrow Agent may, without notice to Buyer and Seller, sell or liquidate any of the foregoing investments at any time for any disbursement of Escrow Funds permitted or required hereunder. All investment earnings shall become part of the Escrow Funds and investment losses shall be charged against the Escrow Funds. Escrow Agent shall not be liable or responsible for loss in the value of any investment made pursuant to this Escrow Agreement, or for any loss, cost or penalty resulting from any sale or liquidation of the Escrow Funds. With respect to any Escrow Funds received by Escrow

Agent after twelve o'clock, p.m., Atlantic Standard Time, Escrow Agent shall not be required to invest such funds or to effect any investment instruction until the next day upon which banks in San Juan, Puerto Rico and the New York Stock Exchange are open for business.

8.      Resignation or Removal of Escrow Agent. Escrow Agent may resign and be discharged from the performance of its duties hereunder at any time by giving ten (10) days prior written notice to the Buyer and Seller specifying a date when such resignation shall take effect and, after the date of such resignation notice, notwithstanding any other provision of this Agreement, Escrow Agent's sole obligation will be to hold the Escrow Funds pending appointment of a successor Escrow Agent. Similarly, Escrow Agent may be removed at any time by Purchaser and Seller giving at least thirty (30) days' prior written notice to Escrow Agent specifying the date when such removal shall take effect. Buyer and Seller jointly shall appoint a successor Escrow Agent hereunder prior to the effective date of such resignation or removal.  If the Buyer and Seller fail to appoint a successor Escrow Agent within such time, the Escrow Agent shall have the right to petition a court of competent jurisdiction to appoint a successor Escrow Agent, and all costs and expenses (including without limitation attorneys' fees) related to such petition shall be paid jointly and severally by Buyer and Seller. The retiring Escrow Agent shall transmit all records pertaining to the Escrow Funds and shall pay all Escrow Funds to the successor Escrow Agent, after making copies of such records as the retiring Escrow Agent deems advisable and after deduction and payment to the retiring Escrow Agent of all fees and expenses (including court costs and attorneys' fees) payable to, incurred by, or expected to be incurred by the retiring Escrow Agent in connection with the performance of its duties and the exercise of its rights hereunder. After any retiring Escrow Agent's resignation or removal, the provisions of this Escrow Agreement shall inure to its benefit as to any actions taken or omitted to be taken by it while it was Escrow Agent under this Escrow Agreement.

9.      Binding Effect; Successors.  This Escrow Agreement shall be binding upon the respective parties hereto and their heirs, executors, successors or assigns. If the Escrow Agent consolidates, merges or converts into, or transfers all or substantially all of its corporate trust business (including the escrow contemplated by this Escrow Agreement) to another corporation, the successor or transferee corporation without any further act shall be the successor Escrow Agent.

10.     Liability of Escrow Agent. The Escrow Agent undertakes to perform only such duties as are expressly set forth herein and no duties shall be implied. The Escrow Agent has no fiduciary or discretionary duties of any kind. The Escrow Agent shall have no liability under and no duty to inquire as to the provisions of any agreement other than this Escrow Agreement, including without limitation any other agreement between any or all of the parties hereto or any

other persons even though reference thereto may be made herein. The Escrow Agent shall not be liable for any action taken or omitted by it in good faith except to the extent that a court of competent jurisdiction determines that the Escrow Agent's gross negligence or willful misconduct was the sole cause of any loss to the Buyer or Seller. Escrow Agent's sole responsibility shall be for the safekeeping and disbursement of the Escrow Funds in accordance with the terms of this Escrow Agreement. Escrow Agent shall not be charged with knowledge or notice of any fact or circumstance not specifically set forth herein. Escrow Agent may rely upon any notice, instruction, request or other instrument, not only as to its due execution, validity and effectiveness, but also as to the truth and accuracy of any information contained therein, which Escrow Agent shall believe to be genuine and to have been signed or presented by the person or parties purporting to sign the same. In no event shall Escrow Agent be liable for incidental, indirect, special, consequential or punitive damages or penalties (including, but not limited to lost profits), even if the Escrow Agent has been advised of the likelihood of such damages or penalty and regardless of the form of action. Escrow Agent shall not be responsible for delays or failures in performance resulting from acts beyond its control, including without limitation acts of God, strikes, lockouts, riots, acts of war or terror, epidemics, governmental regulations, fire, communication line failures, computer viruses, power failures, earthquakes or other disasters. Escrow Agent shall not be obligated to take any legal action or commence any proceeding in connection with the Escrow Funds, any account in which Escrow Funds are deposited, this Escrow Agreement or the Underlying Agreement, or to appear in, prosecute or defend any such legal action or proceeding. Escrow Agent may consult legal counsel selected by it in the event of any dispute or question as to the construction of any of the provisions hereof or of any other agreement or of its duties hereunder, or relating to any dispute involving any party hereto, and shall incur no liability and shall be fully indemnified from any liability whatsoever in acting in accordance with the advice of such counsel. Buyer and Seller, jointly and severally, shall promptly pay, upon demand, the reasonable fees and expenses of any such counsel. Buyer and Seller agree to perform or procure the performance of all further acts and things, and execute and deliver such further documents, as may be required by law or as Escrow Agent may reasonably request in connection with its duties hereunder.

The Escrow Agent is authorized, in its sole discretion, to comply with final orders issued or process entered by any court with respect to the Escrow Funds, without determination by the Escrow Agent of such court's jurisdiction in the matter. If any portion of the Escrow Funds is at any time attached, garnished or levied upon under any court order, or in case the payment, assignment, transfer, conveyance or delivery of any such property shall be stayed or enjoined by any court order, or in case any order, judgment or decree shall be made or entered by any court affecting such property or any part thereof, then and in any such event, the Escrow Agent is authorized, in its sole discretion, to rely upon and comply with any such order, writ, judgment

or decree which it is advised by legal counsel selected by it is binding upon it without the need for appeal or other action; and if the Escrow Agent complies with any such order, writ, judgment or decree, it shall not be liable to any of the parties hereto or to any other person or entity by reason of such compliance even though such order, writ, judgment or decree may be subsequently reversed, modified, annulled, set aside or vacated.

11.      Indemnification of Escrow Agent.  From and at all times after the date of this Escrow Agreement, Buyer and Seller, jointly and severally, shall, to the fullest extent permitted by law, indemnify and hold harmless Escrow Agent and each director, officer, employee, attorney, agent and affiliate of Escrow Agent (collectively, the "Indemnified Parties") against any and all actions, claims (whether or not valid), losses, damages, liabilities, penalties, costs and expenses of any kind or nature (including without limitation reasonable attorneys' fees, costs and expenses) incurred by or asserted against any of the Indemnified Parties, whether direct, indirect or consequential, as a result of or arising from or in any way relating to any claim, demand, suit, action or proceeding (including any inquiry or investigation) by any person, including without limitation Buyer, Seller and the Representatives, whether threatened or initiated, asserting a claim for any legal or equitable remedy against any person under any statute or regulation, including, but not limited to, any federal or state securities laws, or under any common law or equitable cause or otherwise, arising from or in connection with the negotiation, preparation, execution, performance or failure of performance in connection with this Escrow Agreement or any transactions contemplated herein, whether or not any such Indemnified Party is a party to any such action, proceeding, suit or the target of any such inquiry or investigation; provided, however, that no Indemnified Party shall have the right to be indemnified hereunder for any liability finally determined by a court of competent jurisdiction, subject to no further appeal, to have resulted solely from the gross negligence or willful misconduct of such Indemnified Party. Buyer and Seller further agree, jointly and severally, to indemnify each Indemnified Party for all costs, including without limitation reasonable attorney's fees, incurred by such Indemnified Party in connection with the enforcement of Buyer's and Seller's indemnification obligations hereunder. Each Indemnified Party shall, in its sole discretion, have the right to select and employ separate counsel with respect to any action or claim brought or asserted against it, and the reasonable fees of such counsel shall be paid upon demand by the Buyer and Seller jointly and severally. The obligations of Buyer and Seller under this Section 11 shall survive any termination of this Escrow Agreement and the resignation or removal of Escrow Agent.

The parties agree that neither the payment by Buyer or Seller of any claim by Escrow Agent for indemnification hereunder nor the disbursement of any amounts to Escrow Agent from the Escrow Funds in respect of a claim by Escrow Agent for indemnification shall impair, limit,

modify, or affect, as between Buyer and Seller, the respective rights and obligations of Buyer and Seller under the Underlying Agreement.

12.    Compensation of Escrow Agent

(a)    Fees and Expenses.  Buyer and Seller agree, jointly and severally, to compensate Escrow Agent on demand for its services hereunder in accordance with Schedule A attached hereto. The obligations of Buyer and Seller under this Section 12 shall survive any termination of this Escrow Agreement and the resignation or removal of Escrow Agent.

(b)    Disbursements from Escrow Funds to Pay Escrow Agent.  Escrow Agent is authorized to, and may disburse to itself from the Escrow Funds, from time to time, the amount of any compensation and reimbursement of out-of-pocket expenses due and payable hereunder (including any amount to which Escrow Agent or any Indemnified Party is entitled to seek indemnification hereunder). Escrow Agent shall notify Buyer and Seller of any disbursement from the Escrow Funds to itself or any Indemnified Party in respect of any compensation or reimbursement hereunder and shall furnish Buyer and Seller copies of related invoices and other statements.

(c)    Security and Offset.  Seller, Buyer and the Representatives hereby grant to Escrow Agent and the Indemnified Parties a security interest in, lien upon and right of offset against the Escrow Funds with respect to any compensation or reimbursement due any of them hereunder (including any claim for indemnification hereunder). If for any reason the Escrow Funds are insufficient to cover such compensation and reimbursement, Buyer and Seller shall promptly pay such amounts to Escrow Agent or any Indemnified Party upon receipt of an itemized invoice.

13.    Representations and Warranties.  Buyer and Seller each respectively make the following representations and warranties to Escrow Agent:

(a)    it has full power and authority to execute and deliver this Escrow Agreement and to perform its obligations hereunder; and this Escrow Agreement has been duly approved by all necessary action and constitutes its valid and binding agreement enforceable in accordance with its terms; and

(b)    each of the applicable persons designated on Schedule C attached hereto have been duly appointed to act as authorized representatives hereunder and individually have full power and authority to execute and deliver any Joint Written Direction, to amend, modify or waive any

provision of this Escrow Agreement and to take any and all other actions as authorized representatives under this Escrow Agreement, all without further consent or direction from, or notice to, it or any other party, provided that any change in designation of such authorized representatives shall be provided by written notice delivered to each party to this Escrow Agreement; and

(c)    it is not a "covered fund" for purposes of the Volcker Rule provisions of the Dodd Frank Wall Street Reform and Consumer Protection Act; and

(d)    each document, notice, instruction or request provided by such party to Escrow Agent shall comply with applicable laws and regulations.

14.    Identifying Information. To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. For a non-individual person such as a business entity, a charity, a trust, or other legal entity, the Escrow Agent requires documentation to verify its formation and existence as a legal entity. The Escrow Agent may ask to see financial statements, licenses, identification and authorization documents from individuals claiming authority to represent the entity or other relevant documentation. The parties acknowledge that a portion of the identifying information set forth herein is being requested by the Escrow Agent in connection with the USA Patriot Act, Pub.L.107-56 (the "Act"), and each agrees to provide any additional information requested by the Escrow Agent in connection with the Act or any other legislation or regulation to which Escrow Agent is subject, in a timely manner.

15.    Consent to Jurisdiction and Venue. In the event that any party hereto commences a lawsuit or other proceeding relating to or arising from this Escrow Agreement, the parties hereto agree to the personal jurisdiction by and venue in the state and federal courts in the State of Delaware and waive any objection to such jurisdiction or venue. The parties hereto consent to and agree to submit to the jurisdiction of any of the courts specified herein and agree to accept service of process to vest personal jurisdiction over them in any of these courts.

16.    Notices. All notices, approvals, consents, requests, and other communications hereunder shall be in writing and shall be delivered (i) by personal delivery, or (ii) by national overnight courier service, or (iii) by certified or registered mail, return receipt requested, or (iv) via facsimile transmission, with confirmed receipt or (v) via email by way of a PDF attachment thereto of a manually executed document. Notice shall be effective upon receipt except for notice via email, which shall be effective only when the Seller, by return email or notice

delivered by other method provided for in this Section 16, acknowledges having received that email (with an automatic "read receipt" or similar notice not constituting an acknowledgement of an email receipt for purposes of this Section 16.) Such notices shall be sent to the applicable party or parties at the address specified below:

If to Buyer or Buyer Representative at:  LienClear-0001, LLC

228 Park Ave S #72536, New York, 10003-1502

Telephone: 401-924-3800
E-mail:     benhedwards@gmail.com

If to Seller or Seller Representative at:  Ebury Street Capital, LLC

16 School Street, NY, 10580

Telephone: 212-634-9097
E-mail:     benhedwards@gmail.com

If to the Escrow Agent at:       LienClear-0002, LLC, as Escrow Agent
ATTN:          Edgardo Vázquez, CPA
Address:       228 Park Ave S #72536, New York, NY 10003
Telephone:    646-854-1395
E-mail:        info@lienclear.com

or to such other address as each party may designate for itself by like notice and unless otherwise provided herein shall be deemed to have been given on the date received.

17.    Optional Security Procedures.  In the event funds transfer instructions, address changes or change in contact information are given (other than in writing at the time of execution of this Escrow Agreement), whether in writing, by facsimile or otherwise, the Escrow Agent is authorized but shall be under no duty to seek confirmation of such instructions by telephone call-back to the person or persons designated on Schedule C hereto, and the Escrow Agent may rely upon the confirmation of anyone purporting to be the person or persons so designated. The persons and telephone numbers for call-backs may be changed only in writing actually received and acknowledged by Escrow Agent and shall be effective only after Escrow Agent has a reasonable opportunity to act on such changes. If the Escrow Agent is unable to contact any of the designated representatives identified in Schedule C, the Escrow Agent is hereby authorized but shall be under no duty to seek confirmation of such instructions by telephone call-back to any one or more of Buyer's or Seller's executive officers ("Executive

Officers"), as the case may be, which shall include the titles of Chief Executive Officer, President and Vice President, as the Escrow Agent may select. Such Executive Officer shall deliver to the Escrow Agent a fully executed incumbency certificate, and the Escrow Agent may rely upon the confirmation of anyone purporting to be any such officer. Buyer and Seller agree that the Escrow Agent may at its option record any telephone calls made pursuant to this Section. The Escrow Agent in any funds transfer may rely solely upon any account numbers or similar identifying numbers provided by Buyer or Seller to identify (a) the beneficiary, (b) the beneficiary's bank, or (c) an intermediary bank. The Escrow Agent may apply any of the Escrow Funds for any payment order it executes using any such identifying number, even when its use may result in a person other than the beneficiary being paid, or the transfer of funds to a bank other than the beneficiary's bank or an intermediary bank designated. Buyer and Seller acknowledge that these optional security procedures are commercially reasonable.

18.    Amendment, Waiver and Assignment.  None of the terms or conditions of this Escrow Agreement may be changed, waived, modified, discharged, terminated or varied in any manner whatsoever unless in writing duly signed by each party to this Escrow Agreement. No course of conduct shall constitute a waiver of any of the terms and conditions of this Escrow Agreement, unless such waiver is specified in writing, and then only to the extent so specified. A waiver of any of the terms and conditions of this Escrow Agreement on one occasion shall not constitute a waiver of the other terms of this Escrow Agreement, or of such terms and conditions on any other occasion. Except as provided in Section 9 hereof, this Escrow Agreement may not be assigned by any party without the written consent of the other parties.

19.    Severability.  To the extent any provision of this Escrow Agreement is prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Escrow Agreement.

20.    Governing Law.  This Escrow Agreement shall be construed and interpreted in accordance with the internal laws of the State of Delaware without giving effect to the conflict of laws principles thereof.

21.    Entire Agreement, No Third Party Beneficiaries.  This Escrow Agreement, together with the schedules attached hereto, constitutes the entire agreement between the parties relating to the holding, investment and disbursement of the Escrow Funds and sets forth in their entirety the obligations and duties of Escrow Agent with respect to the Escrow Funds. Nothing in this Escrow Agreement, express or implied, is intended to or shall confer upon any other person any right, benefit or remedy of any nature whatsoever under or by reason of this Escrow Agreement.

22.      Execution in Counterparts, Facsimiles.  This Escrow Agreement and any Joint Written Direction may be executed in two or more counterparts, which when so executed shall constitute one and the same agreement or direction. The delivery of copies of this Escrow Agreement and any Joint Written Instruction and their respective signature pages by PDF or facsimile transmission shall constitute effective execution and delivery as to the parties and may be used in lieu of originals for all purposes.

23.      Termination.   This Escrow Agreement shall terminate upon the distribution of all the Escrow Funds pursuant to any applicable provision of this Escrow Agreement, and Escrow Agent shall thereafter have no further obligation or liability whatsoever with respect to this Escrow Agreement or the Escrow Funds.

24.      Dealings.  The Escrow Agent and any stockholder, director, officer or employee of the Escrow Agent may buy, sell, and deal in any of the securities of the Buyer or Seller and become pecuniarily interested in any transaction in which the Buyer or Seller may be interested, and contract and lend money to the Buyer or Seller and otherwise act as fully and freely as though it were not Escrow Agent under this Agreement. Nothing herein shall preclude the Escrow Agent from acting in any other capacity for the Buyer or Seller or for any other entity.

25.      Brokerage Confirmation Waiver.  Buyer and Seller acknowledge that to the extent regulations of the Comptroller of the Currency or other applicable regulatory entity grant either the right to receive brokerage confirmations for certain security transactions as they occur, Buyer and Seller specifically waive receipt of such confirmations to the extent permitted by law. The Escrow Agent will furnish the Buyer and Seller periodic cash transaction statements that include detail for all investment transactions made by the Escrow Agent.

26.      Tax Reporting. Escrow Agent shall have no responsibility for the tax consequences of this Agreement and Buyer and Seller shall consult with independent counsel concerning any and all tax matters. Buyer and Seller shall provide Escrow Agent Form W-9 and an original Form W-8, as applicable, for each payee, together with any other documentation and information requested by Escrow Agent in connection with Escrow Agent's reporting obligations under applicable IRS regulations. If such tax documentation is not so provided, Escrow Agent shall withhold taxes as required by the IRS. Seller and Buyer have determined that any interest or income on Escrow Funds shall be reported on an accrual basis and deemed to be for the account of Buyer.  Buyer and Seller shall prepare and file all required tax filings with the IRS and any other applicable taxing authority; provided that the parties further agree that:

(a)     Escrow Agent IRS Reporting. Buyer shall accurately provide the Escrow Agent with all information requested by the Escrow Agent in connection with the preparation of all applicable Form 1099 and Form 1042-S documents with respect to all distributions as well as in the performance of Escrow Agent's reporting obligations under the Foreign Account Tax Compliance Act and Foreign Investment in Real Property Tax Act or other applicable law or regulation.

(b)     Withholding Requests and Indemnification. Buyer and Seller jointly and severally agree to (i) assume all obligations imposed now or hereafter by any applicable tax law or regulation with respect to payments or performance under this Agreement, (ii) request the Escrow Agent in writing with respect to withholding and other taxes, assessments or other governmental charges, and advise Escrow Agent in writing with respect to any certifications and governmental reporting that may be required under any applicable laws or regulations, and (iii) indemnify and hold the Escrow Agent harmless pursuant to Section 11 hereof from any liability or obligation on account of taxes, assessments, additions for late payment, interest, penalties, expenses and other governmental charges that may be assessed or asserted against Escrow Agent.

(c)     Imputed Interest. To the extent that IRS imputed interest regulations apply, Buyer and Seller shall so inform Escrow Agent, provide Escrow Agent with all imputed interest calculations and direct Escrow Agent to disburse imputed interest amounts as Buyer and Seller deem appropriate. Escrow Agent shall rely solely on such provided calculations and information and shall have no responsibility for the accuracy or completeness of any such calculations or information.

**27.**     WAIVER OF TRIAL BY JURY.  EACH PARTY TO THIS AGREEMENT HEREBY WAIVES ANY RIGHT THAT IT MAY HAVE TO A TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (1) ARISING OUT OF OR IN ANY WAY RELATED TO THIS AGREEMENT OR (2) IN ANY WAY IN CONNECTION WITH OR PERTAINING OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF THE PARTIES TO THIS AGREEMENT OR IN CONNECTION WITH THIS AGREEMENT OR THE EXERCISE OF ANY SUCH PARTY'S RIGHTS AND REMEDIES UNDER THIS AGREEMENT OR THE CONDUCT OR THE RELATIONSHIP OF THE PARTIES TO THIS AGREEMENT, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER IN CONTRACT, TORT OR OTHERWISE. EACH OF THE PARTIES HERETO HEREBY FURTHER ACKNOWLEDGES AND AGREES THAT EACH HAS REVIEWED OR HAD THE OPPORTUNITY TO REVIEW THIS WAIVER WITH ITS RESPECTIVE LEGAL COUNSEL, AND THAT IT KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH SUCH LEGAL COUNSEL. IN THE EVENT OF

LITIGATION, THIS AGREEMENT MAY BE FILED AS A CONSENT BY ALL PARTIES TO A TRIAL BY THE COURT.

28.    Publicity.  No party will (a) use any other party's proprietary indicia, trademarks, service marks, trade names, logos, symbols, or brand names, or (b) otherwise refer to or identify any other party in advertising, publicity releases, or promotional or marketing publications, or correspondence to third parties without, in each case, securing the prior written consent of such other party.

29.    Assurance of Further Action:   From time to time after the Closing Date and without further consideration, each of the parties to this Agreement shall execute and deliver, or cause to be executed and delivered, such further instruments and agreements, and shall take such other actions, as any other party may reasonably request in order to more effectively effectuate the transactions contemplated by this Agreement.

**IN WITNESS WHEREOF**, the parties hereto have caused this Escrow Agreement to be executed and hereby adopt as part of this instrument Schedules A through C, I and II which are incorporated by reference under seal as of the date first above written.

LienClear-0001, LLC

By: _____

Name:  Ben Edwards

Title:  Authorized Signatory

**Address:**       228 Park Ave S #72536
New York, NY, 10003-1502

**Phone No.**       401-924-3800

Ebury Street Capital, LLC

By: *John Hanratty*

Name:  John Hanratty

Title:  Authorized Signer


**Address:**        16 School Street

Rye,NY,10580


**Phone No.**        212-634-9097


**LienClear-0002, LLC**
**as Escrow Agent**


By: *Edgardo Vazquez*

Name: Edgardo Vázquez, CPA

Title:  Authorized Signer


## SCHEDULE A

**Schedule of Fees for Services as**
**Escrow Agent**
**For**

**Acceptance Fee** (excluding charge for legal counsel and/or legal opinion)
The acceptance fee includes the administrative review of documents, initial set-up of the account, and other reasonably required services up to and including the closing. This is a one-time fee, payable at closing.

WAIVED

LienClear-0002, LLC reserves the right to refer any or all escrow documents for legal review before execution. Legal fees (billed on an hourly basis) and expenses for this service will be billed to, and paid by, the customer. If appropriate and upon request by the customer, LienClear-0002, LLC will provide advance estimates of these legal fees.

for

BLOXTrade

Clients

**Escrow Agent**

WAIVED
for
BLOXTrade
Clients

One time administration fee for performance of the routine duties of the escrow agent associated with the management of the account. Administration fees are payable in advance.

*Direct Out of Pocket Expenses*

Reimbursement of expenses associated with the performance of our duties, including but not limited to publications, legal counsel after the initial close, travel expenses and filing fees.

At
Cost

*Extraordinary Services*

Extraordinary services are duties or responsibilities of an unusual nature, including termination, but not provided for in the governing documents or otherwise set forth in this schedule. A reasonable charge will be assessed based on the nature of the service and the responsibility involved. At our option, these charges will be billed at a flat fee or at our hourly rate then in effect.

Account approval is subject to review and qualification. Fees are subject to change at our discretion and upon written notice. Fees paid in advance will not be prorated. The fees set forth above and any subsequent modifications thereof are part of your agreement. Finalization of the transaction constitutes agreement to the above fee schedule, including agreement to any subsequent changes upon proper written notice. In the event your transaction is not finalized, any related out-of-pocket expenses will be billed to you directly. Payment of fees constitutes acceptance of the terms and conditions set forth.

IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT:

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account.

For a non-individual person such as a business entity, a charity, a Trust or other legal entity we will ask for documentation to verify its formation and existence as a legal entity. We may also ask to see financial statements, licenses, identification and authorization documents from individuals claiming authority to represent the entity or other relevant documentation.

**Dated:** December 6, 2018

## <u>SCHEDULE B</u>

Each of the following person(s) is a **Buyer Representative** authorized to execute documents and direct Escrow Agent as to all matters, including fund transfers, address changes and contact information changes, on Buyer's behalf (only one signature required):

| Name | Specimen signature | Telephone No. |

| Name | Specimen signature | Telephone No |

| Name | Specimen signature | Telephone No |

*(Note: if only one person is identified above, please add the following language:)*
The following person not listed above is authorized for call-back confirmations:

| Name | Telephone Number |

Document Ref: AQ7C8-ST6UY-JMEV8-UUL2L

Each of the following person(s) is a **Seller Representative** authorized to execute documents and direct Escrow Agent as to all matters, including fund transfers, address changes and contact information changes, on Seller's behalf (only one signature required):

| John Hanratty | | |
|---|---|---|
| Name | Specimen signature | Telephone No |

| John Hanratty | | |
|---|---|---|
| Name | Specimen signature | Telephone No |

| John Hanratty | | |
|---|---|---|
| Name | Specimen signature | Telephone No |

*(Note: if only one person is identified above, please add the following language:)*
The following person not listed above is authorized for call-back confirmations

John Hanratty                                    9142164241
Name                                             Telephone Number


## SCHEDULE I

### DEPOSITS:

Buyer shall deposit the following amounts into the escrow account upon execution of this Agreement (reference is made to the "Fee Schedule" set forth on Schedule II):

1.    Purchase Price:                $ 1,828,267.72

2.    Buyer's Brokerage Fee:         $ 0

3.    Buyer's Transaction Fees:      $ 4,931.60

4.      Municipal Transfer Fees                $ 2,318.40 (estimated passthrough cost)

5.      Administrative Fee                      $ 250

**TOTAL:**                                      **$ 1,835,767.72**

## SCHEDULE II

## JOINT WRITTEN DIRECTION

Buyer and seller (i) have entered a Tax Lien Purchase and Sale Agreement of even date herewith ("Purchase Agreement") pursuant to which Seller is selling to Buyer, and Buyer is purchasing from Seller, certain tax lien assets ("Tax Liens") as set forth in the Purchase Agreement (the "Transaction"); (ii) have entered into a services agreement with LienClear, LLC, a third party servicer ("Servicer") pursuant to which Servicer will execute the transfer and assignment of the Tax Liens from Seller to Buyer; and (iii) have entered into separate Master Brokerage Services Agreements with BLOXTrade, LLC ("BLOXTrade") pursuant to which each party owes certain brokerage fees ("Brokerage Fees") to BLOXTrade in connection with the Transaction. The following "Fee Schedule" sets forth purchase price for the Tax Liens, Brokerage Fees due by each party and other "Transaction Fees" related to the Transaction.

# FEE SCHEDULE

| Description | Buyer | Seller |
|---|---|---|
| Purchase Price for Tax Liens: | $1,828,267.72 | N/A |
| Brokerage Fees: | $0 | $18,848.12 |
| Transaction Fees: | | |
| Escrow Fees: | $500 | $500 |
| Municipal Fees: | $2,318.40 (estimated passthrough cost) | $2,318.40 (estimated passthrough cost) |
| Administrative Fees: | $250 | $250 |
| Servicer Fees: | $4,431.60 | $4,431.60 |
| Total: | $1,835,767.72 | $26,348.12 |

In respect of the foregoing, Buyer and Seller hereby acknowledge and agree that the funds deposited into the escrow account as set forth in Schedule 1 shall be disbursed to such parties at such times and upon the satisfaction of such conditions as follows (the "Disbursement Amounts" below reference the Fee Schedule):

1. Upon execution of this Agreement and deposit of the funds set forth on Schedule 1, Agent shall disburse the following:

Recipient: Agent
Disbursement Amount: LienClear-0002, LLC Escrow Fees for Buyer and Seller
Delivery Instructions:
Name: Edgardo Vázquez, CPA
Company: LienClear-0002, LLC
Address: 228 Park Ave S #72536
City, State, Zip: New York, NY 10003-1502

2. Upon receipt by Agent of a written request from Servicer requesting the amounts below to pay transfer and assignment costs at the county or municipal level and documentation supporting such costs (such disbursement not to exceed the amoun set forth in the Fee Schedule), Agent shall disburse the following:

Recipient: Servicer
Disbursement Amount: Not to exceed Municipal Transfer Fees amount for Buyer and Seller
Delivery Instructions: As directed by Servicer in writing
Name: Badel A. Hernández, Esq.
Company: LienClear, LLC
Address: 53 Palmeras St. Suite 901
City, State, Zip: San Juan, PR 00901

3. Upon receipt by Agent of the certification from Servicer certifying that the Tax Liens have been transferred to Buyer, along with supporting documentation, Agent shall disburse the following in the order set forth below:

(i) Recipient:                BLOXTrade
   Disbursement Amount: Brokerage Fees and Administrative Fees for Buyer and Seller
   Delivery Instructions:    Beneficiary Account #: 030029449
Routing/ ABA#: 021502011

Name: Thomas McOsker, Founder and CEO
Company: BLOXTrade, LLC
Address: 53 Palmeras St, 10th Floor, Suite 901
City, State, Zip: San Juan, PR, 00901


(ii) Recipient:                Servicer
    Disbursement Amount: Servicer Fees for Buyer and Seller
    Delivery Instructions:    As directed by Servicer in Writing
Name: Badel A. Hernández, Esq.
Company: LienClear, LLC
Address: 53 Palmeras St. Suite 901
City, State, Zip: San Juan, PR 00901


(iii) Recipient: Purchase Price net Seller's Transaction Fees to Seller
Disbursement Amount: $ 1,801,919.60
Delivery Instructions: Beneficiary Account #:
Routing/ABA #:
Name: John Hanratty
Company: Ebury Street Capital, LLC
Address: 16 School Street
City, State, Zip: Rye, NY, 10580


(iv) Recipient: Buyer and Seller
Disbursement Amount: Any remaining balance shall be distributed as directed by Buyer and
Seller in accordance with the Purchase Agreement
Delivery Instructions: Beneficiary Account #: 662169577
Routing/ABA #: 021000021
Name: Ben Edwards
Company: LienClear-0001, LLC
Address: 228 Park Ave S #72536
City, State, Zip: New York, NY, 10003-1502


### *LienClear-0002, LLC Wire Instructions*


LienClear-0002, LLC
021000021
Beneficiary account #662179816

Address: 228 Park Ave S #72536
New York, NY 1003-1502

# SERVICING AGREEMENT

Document Ref: AQ7C8-ST6UY-JMEV3-UUL2L

## SERVICES AGREEMENT

**THIS SERVICES AGREEMENT** (this "Agreement") is made this December 6, 2018 ("Date"), by and among Ebury Street Capital, LLC (the "Seller"), LienClear-0001, LLC (the "Buyer"), and LienClear, LLC (the "Servicer").

## RECITALS:

**WHEREAS,** Buyer and Seller are party to a Tax Lien Purchase and Sale Agreement of even date herewith pursuant to which Seller is selling to Buyer and Buyer is purchasing from Seller the tax liens ("Tax Liens") that set forth on Schedule 1 hereto (such purchase and sale referred to herein as the "Transaction");

**WHEREAS,** in connection with the Transaction, Buyer and Seller are entering into an escrow agreement of even date herewith pursuant to which they are engaging a third party escrow agent ("Escrow Agent") to perform escrow services in connection with the Transaction; and

**WHEREAS,** in connection with the Transaction, Buyer and Seller desire to enter into this Agreement in order to engage Servicer to perform the transfer and assignment of the Tax Liens from Seller to Buyer in connection with the Transaction, and Servicer desires to provide such services in accordance with the terms set forth herein.

**NOW, THEREFORE**, in consideration of the promises and covenants made herein, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

## AGREEMENT:

1. **Services**. Servicer shall provide the services to Buyer and Seller as set forth on Exhibit A hereto (the "Services") in accordance with this Agreement.
2. **Fees for Services**. Upon completion of the Services, the Servicer shall be entitled to the fees ("Fees") set forth on Exhibit A.

3. **Term.** This Agreement shall become effective on the date hereof and shall remain in effect until completion of the Services as set forth on Exhibit A, unless earlier terminated pursuant to the terms hereof. Notwithstanding any other provision of this Agreement to the contrary, Buyer and Seller may terminate this Agreement in its entirety upon (i) any act or omission that may

constitute negligence or willful misconduct by Servicer; or (ii) a breach by Servicer of this Agreement.

4. **Servicer's Covenants**. Servicer accepts the relationship of trust and confidence established by this Agreement and covenants and warrants as follows:

a. Servicer will (i) employ the Servicer's best skill, efforts and judgment in performing the Services; (ii) utilize efficient business administration and supervision; and (iii) perform the Services in the most expeditious and economical manner.

b. The Services shall be performed in a timely, highly professional and ethical manner, in accordance with applicable industry standards, and in accordance with the terms and conditions of this Agreement.

c. Servicer shall, in performing the Services, comply with all applicable federal, state and local laws, ordinances, regulations and orders (collectively, " Laws").

d. Servicer shall, prior to commencing performance of any of the Services, obtain, and shall maintain throughout the term of this Agreement, all approvals, licenses and/or permits required by any Law or governmental agency, board or other jurisdiction in order to provide the Services.

e. Servicer promptly shall notify the Company of any defects, deficiencies or other issues that impede or preclude Servicer from providing any or all of the Services. Servicer represents that it has investigated the conditions necessary to provide the Services and assumes the liabilities and risks related thereto.

f. Servicer shall be solely responsible for the office space, facilities, equipment, means, methods, techniques and procedures used by Servicer to perform the Services under this Agreement.

g. Servicer in their sole discretion and at their own risk reserves the right to retain or employ a subcontractor from time to time in order to meet the terms and deadlines detailed in the Services rendered under this Agreement.

5. **Confidentiality**. Servicer will become informed of confidential, proprietary and secret information concerning Buyer and Seller and their respective affiliates, including without limitation, information concerning their business, operations, methodology, research, customers, corporate planning, products, business practices and financial condition (collectively, "Confidential Information"). Servicer agrees to keep in strict confidence, and not divulge, make available or use (except for use in the performance of the Services under this Agreement) any such Confidential Information of either Buyer or Seller.

6. **Expenses**. Servicer agrees that it is solely responsible for any and all funds expended or expenses or liabilities incurred by it in connection with its performance under this Agreement. It is understood and agreed that neither Buyer or Seller shall be liable for expenses or damages in

any form by reason of any termination of this Agreement in accordance with the terms hereof including but not limited to any claims relating to or arising out of Servicer's expected future performance under this Agreement.

7. **Indemnification**. Servicer shall indemnify, hold harmless and, if requested by the Buyer or Seller, each in their sole and absolute discretion, defend Buyer and Seller, their respective affiliates and respective officers, directors, shareholders, employees, partners, members, managers, agents, attorneys, successors, assigns and authorized representatives from and against any and all claims, demands, actions, causes of action, judgments, damages, recoveries, fines, penalties, interest, liabilities, fees, costs, expenses and other losses, including reasonable attorneys' fees and court costs (collectively, "Losses") to the extent arising out of Servicer's performance under this Agreement, Servicer's breach of any representation, warranty or covenant under this Agreement, Servicer's negligence or misconduct, or Servicer's breach of any Law.

8. **Books and Records; Audit.** Servicer shall maintain books and records with respect to the Services to be provided hereunder and the Payments to be paid hereunder as reasonably requested by Buyer or Seller, which shall be provided to Buyer and/or Seller for review as requested.

9. **Independent Contractor; Scope of Authority.** The relationship between Servicer and each of Buyer and Seller is that of independent contractor, and nothing contained in this Agreement shall any party a partner, agent, employee, joint venturer, dealer or franchisee of any other party. Servicer is retained by Buyer and Seller only for the purposes and to the extent set forth in this Agreement. No party may bind another unless specifically authorized to do so in writing.

10. **Notices.** All notices, demands, requests and other communications required or permitted hereunder shall be in writing and shall be (i) personally delivered with a written receipt of delivery; (ii) sent by a nationally recognized overnight delivery service requiring a written acknowledgement of receipt or providing a certification of delivery or attempted delivery; (iii) sent by certified or registered mail, postage prepaid, with return receipt requested; or (iv) sent by facsimile (receipt confirmed electronically and promptly confirmed by mail, overnight courier or personal delivery to the recipient), to the attention of the individual shown below at the address set forth below, or to such other address, attention of such individual, as either party may from time to time designate in writing to the other in accordance herewith. All notices shall be deemed effective when actually delivered as documented in a delivery or confirmation receipt.

If to the Seller: Ebury Street Capital, LLC
16 School Street

Rye, NY, 10580

If to the Buyer: LienClear-0001, LLC
228 Park Ave S #72536
New York, NY, 10003-1502

If to Servicer: LienClear, LLC
53 Palmeras St. Suite 901
San Juan, PR 00901

11. **Governing Law; Venue.** This Agreement shall be governed and construed in accordance with the laws of the State of Delaware, with regard to the conflict of laws provisions thereof, and the parties consent to the sole and exclusive jurisdiction of the state and federal courts having jurisdiction in the County of Wilmington, Delaware for any dispute arising out of this Agreement.

12. **Attorneys Fees.** The substantially prevailing party in any action or proceeding brought to enforce or interpret this Agreement shall be awarded and receive its costs and reasonable attorney's fees (including those of in-house counsel).

13. **Entire Agreement.** This Agreement, together with the addendum and exhibits attached hereto and thereto, contains all of the terms and conditions agreed upon by the parties hereto with reference to the subject matter hereof and supersedes all prior agreements and negotiations with respect to the subject matter hereof. This Agreement cannot be modified or changed except by written instrument signed by all parties hereto.

14. **No Waiver.** No provision of this Agreement shall be deemed to have been waived, except if such waiver is contained in a written instrument executed by the party against whom such waiver is to be enforced. No waiver by a party of any term or condition of this Agreement shall constitute a waiver by such party of any prior, concurrent or subsequent breach or default of the same or any other term or condition of this Agreement.

15. **Severability.** In the event that any part of this Agreement shall be held to be invalid or unenforceable by a court of competent jurisdiction, such provision shall be reformed and enforced to the maximum extent permitted by law. If such provision cannot be reformed, it shall be severed from this Agreement and the remaining portions of this Agreement shall be valid and enforceable.

16. **Assignability.** This Agreement shall be binding and inure to the benefit of the successors and permitted assigns of the parties hereto. The parties acknowledge and agree that the obligations of Servicer are personal to Servicer and that Servicer may not assign or subcontract

its rights, obligations or this Agreement, except with the prior written approval of Buyer and Seller. Each of Buyer and Seller may, without the consent of the other parties, assign this Agreement to any affiliate or subsidiary or to any person or entity acquiring substantially all of its assets.

17. **Counterparts/Facsimile**. This Agreement may be executed in several counterparts, and each counterpart shall constitute one Agreement binding on all parties hereto, notwithstanding that all of the parties are not signatory to an original or same counterpart. This Agreement may be executed by facsimile signature or electronically.

18. **Survival.** The provisions of this Agreement which, by their reasonable terms, are intended to survive termination of this Agreement (such as indemnity and confidentiality obligations) shall survive termination. In the event that this Agreement is terminated or expires by its terms, such expiration or termination shall not affect any liability or other obligation which shall have accrued prior to such termination.

19. **Authority to Execute**. Each person executing this Agreement represents and warrants that it is duly authorized to execute this Agreement by the party on whose behalf it is so executing.

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first above written.

**BUYER**

By:
Name: Ben Edwards
Title: Authorized Signatory

**SELLER**

By: *John Hanratty*
Name: John Hanratty
Title: Authorized Signer

**SERVICER**

By: *Badel A. Hernández, Esq.*
Name: Badel A. Hernández, Esq.
Title: Authorized Signer

## SCHEDULE 1
## TAX LIENS

{Attached}

## EXHIBIT A

### Services

Servicer shall take all actions and execute and deliver, or oversee the execution and delivery of, all documents and certificates necessary to effectuate the transfer of ownership of the Tax Liens (except for Excluded Tax Liens (as defined herein)) from Seller to Buyer, including without limitation:

1. Review the list of Tax Liens to determine whether any of the Tax Liens are untransferable due to a redemption, due to the certificate being involved in a Bankruptcy procedure, due to the certificate being involved in a County-Initiated Tax Deed Acquisition procedure or due to the lien encumbering a property on the county's List of Lands Available for Sale or for any other reason (such untransferable Tax Liens are referred to herein as the " Excluded Tax Liens");

2. For all Tax Liens other than Excluded Tax Liens, execute or oversee the execution of the assignment portion of each Tax Lien certificate on behalf of the Seller to effectuate the assignment of each such Tax Lien to Buyer;

3. Deliver or oversee the delivery of such executed Tax Lien certificates to Buyer or Buyer's designated representative;

4. Upon delivery of the foregoing documents to Buyer or Buyer's representative, execute the attached "Certificate of Servicer Evidencing Transfer of Tax Liens" and deliver such certificate along with a final list of all transferred Tax Liens to the Escrow Agent, Buyer and Seller; and

5. Take such other actions as reasonably requested by Buyer or Seller to further effectuate the completion of the Transaction.

### Fees

Upon completion of the Services set forth above, including without limitation execution and delivery of the Certificate of Servicer Evidencing Transfer of Tax Liens" to the Escrow Agent, Escrow Agent shall pay to Servicer $ 8,863.20 in such form as directed by Servicer.

## CERTIFICATE OF SERVICER EVIDENCING TRANSFER OF TAX LIENS

Date: December 6, 2018

LienClear-0002, LLC (" Escrow Agent")
Attn: Edgardo Vázquez, CPA
228 Park Ave S #72536
New York, New York 10003-1502

(" Seller") Ebury Street Capital, LLC
Attn: John Hanratty
Address: 16 School Street
Rye, NY, 10580

(" Buyer") LienClear-0001, LLC
Attn: Ben Edwards
Address: 228 Park Ave S #72536
New York, NY, 10003-1502

RE: Certification of Servicer Evidencing Transfer of Ownership of Tax Liens

Reference is made to (i) the Tax Lien Purchase and Sale Agreement between Buyer and Seller dated December 6, 2018 ("Purchase Agreement") pursuant to which Seller is selling to Buyer and Buyer is purchasing from Seller certain tax liens as further set forth therein ("Tax Liens"); (ii) the Services Agreement between Buyer, Seller and the undersigned dated December 6, 2018 ("Services Agreement") pursuant to which the undersigned ("Servicer") is effectuating the transfer of ownership of the Tax Liens from Seller to Buyer; and (iii) the Escrow Agreement between Buyer, Seller and Escrow Agent dated December 6, 2018 ("Escrow Agreement"), in which the undersigned Servicer is so identified.

The undersigned hereby certifies that all actions have been taken and all documents have been executed and delivered in accordance with the Purchase Agreement, Services Agreement and the applicable local taxing authority to effectuate the transfer of ownership of the Tax Liens set forth on the attached list from Seller to Buyer. This certificate is being delivered in accordance with the terms and conditions of the Escrow Agreement.

Respectfully,

Badel A. Hernández, Esq.
("Servicer")

Address: 53 Palmeras St. Suite 901
San Juan, PR 00901



# Signature Certificate

Document Ref.: AQ7C8-ST6UY-JMEV3-UUL2L

Document signed by:

**Badel Hernandez**

Verified E-mail:
badel.hernandez@bcmg.com

*Badel A. Hernández, Esq.*

**Ben Edwards2**

Verified E-mail:
benhedwards@gmail.com

**John Hanratty**

Verified E-mail:
jh@eburycap.com

*John Hanratty*

**Edgardo Vazquez**

Verified E-mail:
edgardo.vazquez@bcmg.com

*Edgardo Vazquez*

Document completed by all parties on:
22 Apr 2019 15:21:07 UTC
Page 1 of 1

Signed with PandaDoc.com

PandaDoc is the document platform that boosts your
company's revenue by accelerating the way it transacts.