**Exhibit F**

## AFFIDAVIT



I, John Hanratty, an adult, married, reside in San Juan, Puerto Rico, and under the most solemn oath declare that the factual statements contained herein, are true and correct to the best of my knowledge:

1.      I am the Managing Director of Ebury Street Capital, LLC ("ESC"), a New York limited liability company, which along with Ebury Fund 1 NJ, LLC; Ebury Fund 2 NJ, LLC; EB 1EMIALA, LLC; and, EB 2EMIALA, LLC (collectively, "Plaintiffs"), are in the business of investing in tax liens. ESC runs the day-to-day operations of the remaining Plaintiffs, whose sole purpose is to own tax lien certificates in the states of New Jersey and Alabama. As Managing Director of ESC, I have personal knowledge of Potential Plaintiffs' claims against Thomas R. McOsker (hereinafter, "McOsker"), and other companies under McOsker's exclusive control, which include BCMG Services, LLC, among others (hereinafter, "the McOsker Companies"). In essence, by using his companies as a front, McOsker wrongfully converted funds owed to Plaintiffs, in breach of the escrow agreements related to the sale of tax liens.

2.      I have maintained a 10-year business relationship with McOsker and his businesses prior to the events giving rise to Plaintiffs' claims. This relationship was built on the trust that McOsker and the McOsker Companies gained over the course of upwards of ten tax lien transactions with Plaintiffs and their affiliates. Furthermore, McOsker and I have a business relationship that is not subject to the agreements relevant to the claims to Plaintiffs and to McOsker Companies.



3.    As a result of the above, I have personal knowledge of the facts relevant to Plaintiffs' claims, which is why I am willingly providing the instant sworn statement, duly notarized under the laws of Puerto Rico.

4.    Plaintiffs and the McOsker Companies entered into agreements from September 2018 through December 2018 for the sale of approximately 1,000 tax liens that were grouped in four separate tax lien trades. Under the agreements, the tax lien trades were structured so that Plaintiffs were the sellers, other parties were the ultimate buyers, whereas the McOsker Companies acted as middlemen. Specifically, under the escrow agreements, the McOsker Companies were required to hold onto the funds in escrow accounts until the conditions for their disbursement had been met. Within that period, the four trades were placed with Bloxtrade, LLC ("Bloxtrade"), one of McOsker Companies.

5.    Prior to October 2018, I had questioned and requested information from McOsker and his employees on multiple occasions as to why certain transactions were taking so long to close. In response, around October 2018, I was informed by McOsker that the balances of the escrow accounts had been withdrawn to be used — and were used — on McOsker Companies and unrelated to Plaintiffs. McOsker further clarified that he had never previously misappropriated funds from McOsker Company escrow accounts, and that he was simply making "business decisions."

6.    I was informed the purpose of his "business decisions," was to use $1 million as the capital deposit for BCMG International, LLC's IFE ("International Financial Entity") application. I was also informed that the balance of the bank account needed to be



maintained at $1 million dollars until the application was granted by the Puerto Rico Office of the Commissioner for Financial Institutions ("OCIF").

7.      Between November 2018 and January 2019, while attempting to resolve the issues between Plaintiffs and the McOsker Companies, on multiple occasions I requested to be informed whether the funds where removed and where to, current assets owned by McOsker and the McOsker Companies, current liabilities of McOsker and the McOsker Companies, and what would be the source of repayment for its outstanding obligations to the Plaintiffs.

8.      Around February 2019, I became aware that McOsker spent large portions of the escrow funds owed to Plaintiffs on personal items. For instance, McOsker purchased the Naranjito Changas Volleyball Team (for $82,700), a 500-acre coffee farm at Las Marías ($675,000), and payed salaries to himself (for $150,000 annually) and to his girlfriend (for $75,000 annually).

9.      In an email from Andrew Kernan (hereinafter, "Kernan"), the CFO of BCMG Services, he informed me that the escrow funds owed to Plaintiffs were misappropriated by McOsker in order to "clean up" escrow balances from 2017. This disclosure contradicted McOsker's statement that he had never previously misappropriated McOsker Companies escrow accounts. Additionally, Kernan disclosed that the misappropriated escrow funds were used to satisfy an unrelated transaction.

10.      Upon my interactions with other industry participants who did business with the McOsker Companies, I found out that they also had problems closing their trades, prior to 2017. This, along with my interactions with McOsker and his employees, led me to believe

3



that McOsker has employed a systematic tactic of delaying the closing of trades, and providing conflicting excuses to buyers and sellers, in order to buy more time and be able to continue to withdraw the monies owed to clients from their escrow accounts, including the escrow funds owed to Plaintiffs.

11.    McOsker and his employees provided me information in emails to the effect that McOsker had used the escrow funds owed to Plaintiffs, to acquire intellectual property on behalf of various of the McOsker Companies, of which the Plaintiffs have no ownership, as well as to cover his employees' payroll.

12.    Over the last 60 days, the financial conditions of McOsker and the McOsker Companies have continued to deteriorate. McOsker's behavior has become more erratic, while the fraudulent and intentionally misrepresentative actions have increased.

13.    Between March and April of 2019, BCMG Services, LLC, received and monetized a Puerto Rico Industrial Development Company ("PRIDCO") tax credit in excess of $1.6 million, which I was not informed of, nor did Plaintiffs receive any repayment from these funds. When I asked McOsker and Kernan about the status of the funds, I was informed the money was already spent.

14.    Around May 2019, I became aware that McOsker had sold his interest in the Naranjito Changas Volleyball Team for $100,000, of which I was not informed of, nor did Plaintiffs receive any repayment from these funds.

15.    In direct contradiction to McOsker's statement, in June 2019, I became aware that the BCMG International LLC bank account no longer maintained a $1,000,000 balance, and that all that remained was around $350,000.

4

16.     In May 2019, I asked Kernan if there were any open transactions with escrow funds at Bloxtrade. Kernan informed me that to the best of his knowledge, there were none.

17.     In May 2019, I asked McOsker if there were any open transactions with escrow funds at Bloxtrade. McOsker informed me that there were none.

18.     Subsequently, in direct contradiction to Kernan's and McOsker's statements at paragraphs 16 and 17, I became aware of an open transaction with an escrow balance of $150,000 from unrelated parties. Upon requesting the status of those amounts and whether those transactions were closed, I was informed that the money was used to close an unrelated transaction.

19.     On June 13, 2019, I had a conversation with McOsker and inquired about the status of the $150,000 transaction. He told me that he attempted to get a loan from Santander Bank, which was denied, and that he currently had no available means of repaying the $150,000 obligation.

20.     I am also aware of the following: (a) the current past-due payables of the McOsker Companies are in excess of $600,000; (b) of McOsker not satisfying his obligations to his employees' payroll and payments to independent contractors; and (c) of McOsker deducting parking fees of his employees and not paying the parking fees.

21.     On June 6, 2019, I asked McOsker to provide the following information: (1) the real time balance of the BCMG International Scotia Bank account; (2) BCMG Services' LLC PRIDCO 2018 tax credit application and related legal opinion, (3) a list of McOsker's personal real properties, and (4) whether McOsker owed money to other people or to other clients. I have received no response whatsoever to this request.



22.    On June 12, 2019, I met with McOsker at his Palmeras Office. In that meeting, I asked specifically if the $1 million balance was maintained in the Scotia Bank Account, and I was told that Edgardo Vazquez, the Controller of BCMG Services, LLC, would provide me the information. I asked that he show me the screening real time of the account— we agreed to do it the following morning (of June 13, 2019). When the time came, McOsker did not arrive. To this date, I have not received any verification of the account balance in real time nor any of the documents I have requested.

23.    My attempts to resolve this matter extrajudicially on behalf of Plaintiffs have not been fruitful. Instead, my interactions resulted in the discovery of a systematic tactic of McOsker to take advantage of other peoples' transactions. Based on my interactions and knowledge described here, I have reason to belief that the money owed to Plaintiffs, which was required to be maintained on the designated escrow accounts pursuant to the parties' agreements, is completely gone.

_____
John Hanratty

AFFIDAVIT NO. 980

SWORN and SIGNED before me by **John Hanratty**, whom I have identified as such through his Puerto Rico Driver's License No. 7128816 , issued by the government of Puerto Rico, and which includes a picture of the declarant; pursuant to the Law of Puerto Rico, in San Juan, Puerto Rico, on June 14 , 2019.



_____
NOTARY PUBLIC

6